## Reiter *v.* Morton.

1. An action was brought by one of two partners upon articles of partnership to recover damages for the wrongful dissolution of the partnership by the defendant. The plea was covenants performed *absque hoc.* *Held*, that it was not sufficient for plaintiff to show that defendant dissolved the firm, but he must prove, in the first instance, that he himself had performed the covenants in all the articles on his part, and that the defendant, without cause, failed to perform his covenants. A technical breach of such articles is no breach at all. To show a breach which entitles the plaintiff to recover, he must show a wrongful breach.

2. A rule of court prescribed that averments of fact in an affidavit of claim not distinctly and specifically denied by the answer, should be taken as admitted and could be read in evidence. An affidavit of claim alleged that the defendant "wrongfully dissolved the partnership." The defendant replied that for specific reasons he had dissolved it, and the plaintiff was allowed to read his averment, omitting the word "wrongfully." *Held*, to be error. To select words from different portions of an affidavit of claim, and put them together so as to make a sentence, and then offer them as a whole, cannot be sustained.

3. It being shown that the defendant had dissolved the partnership, the defendant justified by evidence that the plaintiff had broken his covenant by not paying in his share of the capital, as provided in the articles. *Held*, that the plaintiff could not be permitted, in rebuttal, to show that before the articles were signed it was agreed that the plaintiff's capital was to be paid out of moneys to become due to him by defendant out of another transaction.

4. In such a case it is competent in estimating the value of the contract, as a measure of damages, to show the actual condition and situation of the business and assets of the firm, together with proof as to the actual results accomplished in the business before the breach · the true measure being what the interest of the party aggrieved would sell for.

November 11th 1880.    Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN, JJ.

Error to the Court of Common Pleas, No. 1, of *Allegheny county:* Of October and November Term 1880, No. 172.

Covenant by Howard Morton against George Reiter, Jr., executor.

The following was the affidavit of claim: That on the 18th of August 1877, affiant and said defendant entered into a copartnership, under the firm name of Reiter & Morton, and at the same time executed articles of copartnership under their respective seals, bearing the same date; that the business of the firm was the manufacture of chain and cable and miscellaneous articles in iron. Said partnership was to continue during the term of the patents under which they were to manufacture, and being for a term of not less than fifteen years from the above-mentioned date, viz., 18th of August 1877. That said firm engaged in business from said date last mentioned, and continued in business as a firm until the 14th of October 1878, when said defendant, without any just cause or reason, and without any breach of duty on part of

plaintiff to justify the same, wrongfully dissolved said partnership, contrary to his covenants contained in the aforesaid articles of partnership; that plaintiff had given defendant no cause for such action on his part, but had in every way conducted himself in a proper manner, and had complied with the said articles of partnership and his covenants therein contained; that the business of said partnership was a valuable and increasing one; that by reason of the premises the said plaintiff has sustained great loss and damage on that account, in the sum of $50,000, which he says is, to the best of his knowledge and belief, a fair estimate of the damages so sustained by him, as aforesaid, all of which he deposes to the best of his knowledge and belief.

The first count of the declaration alleged: " And although the said plaintiff hath well and truly performed and fulfilled all and singular the covenants and agreements in said article mentioned on his part to be done and performed, yet protesting that the said defendant hath not performed or fulfilled anything in the said articles of agreement mentioned on his part and behalf to be done and performed, the said plaintiff, in fact, says that after the making of the said articles, and whilst the said plaintiff and the said defendant were carrying on the business of the manufacture of chain, cable and miscellaneous articles in iron, the said defendant heretofore, to wit, on the 4th day of October, A. D. 1878, at Pittsburgh, to wit, at the county aforesaid, dissolved the said partnership and refused," &c.

And in the second count: " And protesting that the said defendant hath not performed or fulfilled anything in the said articles of agreement mentioned on his part and behalf to be done and performed, while the said plaintiff hath well and truly performed all and singular the covenants and agreements in said article mentioned on his part to be done and performed, the said plaintiff in fact says that," &c.

The defendant pleaded covenants performed, covenants performed *absque hoc*, payment with leave.

Reiter filed the following affidavit of defence: " I have a just and legal defence to the whole of the plaintiff's claim. I did enter into partnership with the plaintiff under the firm name of Reiter & Morton, and I faithfully performed all my covenants contained in said agreement and my partnership duties, but the plaintiff violated his covenants as contained in said agreement and failed in his partnership duties, inter alia, in this, that notwithstanding the needs of the business required the plaintiff to pay up his share of the capital, viz., $4000, and he was called upon so to do, yet he paid in of his capital $2000 only, and he diminished the same by drawing out $202.36; so that the entire capital paid in by him amounted to on the 14th October 1878 $1797.64 only, and prior to and up to said date the plaintiff neglected and refused to pay in the bal-

[Reiter v. Morton.]

ance of his capital.   That on or about the 21st August 1878, the
plaintiff, in violation of his duties to the firm and in bad faith to
the firm, delivered to Wilson, Walker & Co. manufactured chain
belonging to the firm of the value of at least $1394.77, and
agreed that said parties might take the same at $818.67, and I
charge that in said transaction the plaintiff acted in violation of
his copartnership duties.

"The plaintiff, in violation of article 7 of the co-partnership agree-
ment, intermeddled with the financial business of the firm to its
detriment, in one instance at least, to wit, in the case of an
account owing the firm from Lindsay & Sterrett, the plaintiff made
a collection for the firm of which he made no return, and in other
cases he collected accounts due the firm, which, under the articles
of copartnership, he had no right to collect, and appropriated the
same in part to his private use.   Prior to the 14th of October
1878 irreconcilable differences had arisen and existed between
plaintiff and myself, which rendered it impossible to carry on the
business of the firm.

"On the 14th October 1878 I caused to be served on the plaintiff
a notice, of which the following is a copy :

" To Howard Morton :
"You are hereby notified that on account of your neglect and
refusal to pay in your share of the capital stock, in accordance with
our articles of copartnership, and other breaches by you of your
partnership duties, I decline any further to continue the copartner-
ship heretofore existing between you and myself under the firm
name of Reiter & Morton ;  and said partnership is hereby declared
to be dissolved.                        · GEORGE REITER.
" Pittsburgh, Pa., October 12, 1878.

"I aver that the statements contained in the said notice are true,
and that I have good cause for so dissolving said firm.  I expect to
show upon the trial of this case all and singular the facts herein-
before set forth.   I deny that said partnership business was a
valuable one, and I also deny that the plaintiff sustained great loss
and damage, or any loss and damage, by reason of my dissolving
the firm as hereinbefore set forth."

Reiter followed the notice contained in the above affidavit of
defence by filing a bill in equity praying for a dissolution of the
partnership and the appointment of a receiver.   After answer upon
hearing the court decreed a dissolution, and appointed a receiver
under whose direction the affairs of the firm were finally adjusted.
Morton then brought this action of covenant to recover damages for
the wrongful dissolution of the co-partnership before the time limited
in the articles and recovered a judgment for $2000.   To this judg-
ment this writ of error was taken, and the various questions raised
will be found set forth in the following assignments of error.

[Reiter *v.* Morton.]

1. The court below, Bailey, A. L. J., erred in their answer to the fourth point of defendant as follows :

That the burden of proof is upon the plaintiff to satisfy the jury by the weight of the evidence, 1st. That he has faithfully kept and performed all the covenants on his part to be kept and performed ; and 2d. That the defendant has, without cause therefor on the plaintiff's part, neglected to keep and perform his covenants before he can recover in this case ; and that if the plaintiff has not satisfied the jury of both these facts their verdict must be for the defendant.

Ans. " It is not necessary in the first instance that the plaintiff shall have satisfied you that he has faithfully kept and performed all the covenants of the agreement on his part to be kept and performed ; and second, it is not necessary that the plaintiff shall have satisfied you that the defendant has, without cause therefor on the plaintiff's part, neglected to keep and perform his covenants before he can recover in this case.    But it is necessary that the defendant show you that, without cause on his part, the plaintiff neglected to keep his covenants of the agreement."

2. In their answer to the fourth point submitted by the plaintiff as follows :

If the jury believe that the defendant dissolved the partnership without justifiable cause—and the burden of proof is on the defendant to justify—then their verdict may be for the plaintiff.

Ans. " Affirmed."

3. The court erred in their answer to the second point presented by the defendant, which point and answer are as follows :

If the jury believe from the evidence that the plaintiff, Morton, did not contribute to the capital stock of the partnership of Reiter & Morton his proportionate share, as he agreed to in the partnership article in evidence, ' as the needs of the business ' of said firm required, that was cause sufficient to authorize the defendant, Reiter, to dissolve the partnership, and the plaintiff cannot recover in this action.

Ans. " Affirmed : if you find that plaintiff's neglect measurably defeated the ends of the partnership."

4. The court erred in admitting the offer of the plaintiff of a certain portion of the affidavit of. claim, and in overruling the objections of defendant below thereto, and in permitting to be read to the jury a portion of a sentence from said affidavit.    The said action of the court below will appear from the following, viz. :

" Plaintiff's counsel offer in evidence the allegation in the affidavit of claim, and admitted by the affidavit of defence that this partnership was dissolved by the act of George Reiter, the defendant, on October 14th 1878, viz. : When said defendant, without any just cause or reason, and without any breach of duty on the part of

plaintiff to justify the same, wrongfully dissolved said partnership contrary to his covenants contained in the aforesaid articles of partnership."

Objected to, first, because there is no such independent allegation in the affidavit of claim, nor is the inference, as offered from the affidavit, to be found therein in such shape that it may be submitted to the jury as an independent instrument of evidence, and secondly as incompetent.

Objections overruled.

5. The court erred in its answer to the first point submitted by the defendant as follows:

That the partnership agreement in evidence is, under the facts in evidence, not only the best, but the sole evidence of the contract between the plaintiff and the defendant; and the evidence of Howard Morton as to an agreement made a week before the said contract of partnership is incompetent to vary the terms thereof, and must be disregarded by the jury altogether.

Ans. " In the view I take of the case these two propositions are not inseparable, and I affirm the first clause of the point and refuse the remainder."

. 6. The court below erred in its ruling upon the admission of evidence offered by the plaintiff, as appears by the offer, ruling, and evidence as follows:

" Howard Morton, the plaintiff, recalled.

" Q. The article of agreement between you gentlemen has already been shown you, wherein you agreed to pay $4000 into the capital stock and Mr. Reiter agreed to pay $8000 in. Now, state whether before and at the time that agreement was made anything was said or agreed upon between yourself and Mr. Reiter with reference to where you were to receive the money to pay into the capital stock. And whether or not it was understood and agreed between you that your money for the capital stock was to come out of the money which Reiter was to pay you for the interest you conveyed to him in these patents?

" Objected to.

"Mr. *Watson.*—The purpose of the question in connection with other testimony to be offered is to show that the contingency upon which this witness was to contribute a certain amount for the capital stock did not arise, and for the further purpose of showing, in connection with other evidence to be offered, a prevention of the performance of the agreement by the defendant.

" Objected to. First, because the offer does not tend to prove the purpose for which it is alleged to be offered. Secondly, because it is incompetent and irrelevant. And, thirdly, because if competent or relevant at all, it belongs to the plaintiff's case in chief and not in rebuttal. Objections overruled."

7. The court below erred in its answer to the second point presented by the plaintiff, which point and answer are as follows:

If the jury believe that, by agreement between Morton & Reiter, Morton was not to pay in after the payment of $2000 the balance of his contribution to the capital stock until after Reiter had paid his, then the failure of Morton to raise enough money to pay the Wilson, Walker & Co. note would not constitute a cause to justify the dissolution.

Ans. " That point is affirmed. If that was the agreement between the parties, then the mere failure on the part of Morton to raise money to pay the note to Wilson, Walker & Co. would not be enough to justify a dissolution of the firm."

8. The court erred in its answer to the third point submitted by the defendant, which point and answer are as follows:

If the jury believe from the evidence that Morton surreptitiously and without the knowledge and consent of his co-partner, Reiter, turned over to Wilson, Walker & Co. chain belonging to the firm at prices far below the market rates which at the market rates was more than sufficient to pay any claim Wilson, Walker & Co. had against Reiter & Morton, and turned over at the same time checks which said Morton had no authority to sign, and received for his own use in return from said Wilson, Walker & Co. money belonging to the firm, such conduct on his part was a fraud on his co-partner, Reiter, which justified him in dissolving said firm, and bars the plaintiff's right to recover in this action.

Ans. " We come now to the other question in the case which is covered by the third point of the defendant and the first point of the plaintiff.

(The court here read the third point of defendant and first point of plaintiff.)

" You have in these two propositions the antagonistic positions assumed by the respective parties on that question. On the one hand it is maintained that Morton surreptitiously, meaning thereby something more than without the knowledge and consent of his co-partner, made this transfer; that it was made at a price below the market rates; that the excessive amount of chain was taken; that checks were turned over to Wilson, Walker & Co. which Morton had no authority to sign (which is not a very material matter as far as Wilson, Walker & Co. are concerned), and received for his own use in return from Wilson, Walker & Co. money belonging to the firm; that such conduct on his part was a fraud on his co-partner, Reiter, which justified him (Reiter) in dissolving the said firm.

" If you believe that this was a fraudulent act on the part of Mr. Morton, without any cause or excuse, but coming from his own disposition to misconduct himself in his relations with his partner (which ought to have been relations of confidence and trust), and

[Reiter *v.* Morton.]

with intent to take an unjust and unfair advantage of his partner, Mr. Reiter, by compelling him to advance money when he ought not to have done so ; and there was generally misconduct on his part without any sufficient cause or occasion, taken in connection with his failure to pay in the money which he ought to have paid on his partnership accounts ; and if you find that ' necessities of the business required it,' and that that fact was known to him, then I would say Mr. Reiter was justified in dissolving this co-partnership ; that is, if the relations of the partners were such that a court in equity ought to have decreed a dissolution.

" But you must find these facts in order to meet the necessities of the case as I have suggested them to you.

" If, on the other hand, you think that Mr. Morton had reason to and did believe, and the facts warranted him in believing that Mr. Reiter was refusing to conduct the business fairly, was desirous that this note to Wilson, Walker & Co. should go to protest for ulterior purposes of his own, that he meant to default upon his note to Morton for $3000 for such a purpose ; that his design and intent was to force Morton out of the firm, and that Morton in self defence, or to meet the action of Mr. Reiter, determined by this means, even at noon-time, surreptitiously to a certain extent, without the knowledge of Mr. Reiter or of his sons, to take this property, carry it away, making the best bargain he honestly could for the firm with Wilson, Walker & Co., in order to have that note lifted ; then Mr. Reiter cannot complain, and he would not be justified in dissolving the co-partnership ; in other words, you must determine what is the truth in regard to the matter of the transfer of that chain to Wilson, Walker & Co., it is a question whether those are the facts. It is just as vehemently claimed on the part of the defendant that there were no such designs, and that there were other reasons, to wit, that, under the advice of counsel, Reiter defaulted upon his $3000 note to Morton, and also that there was no reasonable ability on the part of the firm of Reiter & Morton, at that time, to meet the note to Wilson, Walker & Co. out of the assets of the firm.

" If there were assets of the firm of Reiter & Morton, Mr. Reiter was not justified in refusing to pay the note of the firm. It was bad faith to the firm if he refused to apply the partnership assets to its payment, if there were such assets, which is another fact you will have to ascertain from the evidence."

9. In its answer to the first point submitted by the plaintiff as follows :

If the jury believe that the defendant, knowing the plaintiff had no other means of obtaining money to pay in his balance of the capital stock than out of the notes of defendant given plaintiff on account of the patent, and defendant in bad faith to his partner and for the purpose of driving the plaintiff from the firm of Reiter & Morton, notified the plaintiff, on August 17th 1878, that he

(Reiter) would not pay his (Reiter's) note falling due about August 21st 1878, but would let it go to protest, and the defendant also refused to pay or appropriate the firm assets to the payment of the note of Wilson, Walker & Co., then if the plaintiff, in good faith and for the purpose of preventing the firm of Reiter & Morton from being sued, applied the assets of the firm of Reiter & Morton to the payment of the debt of the firm as narrated by Morton and Walker and Wilson such application would not constitute a cause justifying the defendant in dissolving the firm of Reiter & Morton.

Ans. "Same as to third point of defendant below. See eighth assignment of error."

10. In admitting the offer of evidence submitted by the plaintiff and in overruling the objections thereto of defendant, which offer and objections are as follows:

"Plaintiff's counsel proposes to prove by Howard Morton, the witness on the stand, to be followed by other testimony on the same subject and of the same effect, that on October 14th 1878, the day George Reiter, the defendant, dissolved the partnership of Reiter & Morton, for which dissolution this action was brought, that said firm were then engaged in the manufacturing and sale of chain and cable and miscellaneous articles in iron. That their works were in Pittsburgh, Pennsylvania, and had a capacity for turning out from one to two tons per day of chains. To show the actual cost of the manufacture of said chain, and to show its market value, and further to show that it was a staple article in the market, and that the said chain could be and was readily sold in the market. To further show that the said firm were then engaged in building new furnaces and erecting new machinery for the more extensive prosecution of their business. To show what the business of the said firm of Reiter & Morton was and that it was increasing. This as bearing upon the question of damages, and to give the jury the items connected with the business of Reiter & Morton from which they can determine what damages plaintiff has suffered by reason of said dissolution.

"Defendant's counsel object to all that portion of the offer following the words 'Pittsburgh, Pennsylvania.' 1st. Because the true nature of damages cannot be arrived at as proposed to be shown in the offer. 2d. Because said offer is incompetent and irrelevant; and 3d. Because in any event the offer is premature, the ground work to justify such proof not yet having been laid by any evidence in the case. Objections overruled."

11. The court erred in the answer to the third point submitted by the plaintiff as follows:

The measure of damages in this case is the immediate loss plaintiff suffered by reason of the dissolution of the firm, and in determining what this loss was they may take into consideration the business in which the firm of Reiter & Morton was engaged, the capacity of their works, the length of time the firm was to continue,

.the cost of the manufacture of the·articles in which the firm dealt at the· market price at which said articles sold, and whether the manufactured articles were a saleable commodity or otherwise.

Ans. " The measure of damages in this case is, as the Supreme Court* has said, compensation for the contract broken according to its value ; the difficulty is in the application of that measure, under the facts, in order to ascertain what the damages are. It is a very difficult matter to ascertain what the value of a contract such as this was because of the various contingencies in business and the unavoidable and unanticipated accidents which pertain to every business. It is difficult to determine how much a business will be worth next year or the year following, and so on indefinitely, as far as the necessities of the case may require, but it is your duty to try to ascertain, if you come to the conclusion, under the charge of the court and the evidence, that the plaintiff is entitled to a verdict or to more than nominal damages, how much he has been damaged. One mode by which you can ascertain the value of this business is indicated in the point, that is, you have a right to consider (in estimating the value of it, if it had any value,) the nature of the business,. the character of the works, their capacity and fitness for the manufacture of chain, the length of time the firm was to continue, and then take into consideration, if it has been established to your satisfaction, what it would cost to manufacture chain, and the price at which it could be sold, and determine whether the business could be conducted at a profit or a loss. The patents under which · the chain was to be manufactured were measurably untried, and needed amendment and alteration in order to make them as practicable as was the intent of the person who invented them. Take into account those expenses and every other expense as well as the mere cost of the labor, and endeavor to determine, as far as you can (if you conclude the plaintiff is entitled to damages for the loss of this business), whether it would have been profitable or unprofitable, and if profitable, to what extent, and what would be the loss to the plaintiff. By way of caution I may say that those profits, which are to be taken into account, are such as the testimony has satisfactorily shown were gained, or to be gained in this business, not prospective, not possible profits, but what, from the evidence, as reasonable men you would draw as the probable result of the conduct of the business as you have heard it detailed here.''

13. The court erred in its ruling upon defendant's offer of evidence as follows : Defendant being on the stand his counsel propounds the following :

" Q. State whether not since Mr. Morton's retirement from the firm you have been able to make any profit out of the chain business conducted at the same place.''

Objected to as irrelevent and incompetent.

Objection sustained.

[Reiter v. Morton.]

*Hampton & Dalzell*, for plaintiff in error.—Where covenants are mutual and dependent, one party cannot call upon the other to perform his part of the contract without having actually performed or tendered performance of his own: Cassel *v.* Cooke, 8 S. & R. 268; Grace *v.* Regal, 11 Id. 351; Withers *v.* Atkinson, 1 Watts 236.

To this *narr.* the defendant pleaded "covenants performed *absque hoc.*" The authorities are uniform to the effect that under this plea the burden of showing performance by the plaintiff of his own covenants was upon him: Zents *v.* Legnard, 20 P. F. Smith 192; Wilkinson *v.* Turnpike Co., 6 Barr 398; Martin *v.* Hammon, 8 Id. 270; Turnpike Co. *v.* McCullough, 1 Casey 303.

So far as the burden of proof is concerned the court actually held that any dissolution was unlawful and called upon the defendant for a justification.

An agreement under seal cannot be contradicted by a parol agreement of an earlier date not mentioned or referred to when the sealed agreement was executed. We were entitled to an affirmance of our third point. The court erred in its rulings as to the measure of damages. The jury were plainly told that in considering the value of the plaintiff's contract they might take into consideration future profits considering the length of time the firm was to continue. This was clearly indefensible. Let it be conceded that profits may be considered in a case of this kind—for there are cases that so rule—they must not be probable but certain. We have not been able to find any case that abandons this safe rule. The distinction is well drawn in Van Ness *v.* Fisher, 5 Lansing 240, commenting on Bagley *v.* Smith, 10 N. Y. 489.

*D. T. Watson* and *Knox & Reed*, for defendant in error.—Our rule of court provides that "material averments of facts as are not directly and specifically traversed and denied by the answer shall be taken as admitted." The affidavit of claim alleged that the defendant had wrongfully dissolved the partnership on the 14th day of October 1878. The affidavit of defence did not "specifically traverse" this but admitting the dissolution, proceeded to justify it. Undoubtedly then in the affidavit of claim and defence taken together, the plaintiff did allege and the defendant did admit the dissolution of the firm. The averment of facts in defendant's affidavit was a plea in confession and avoidance. Such has been the uniform construction of the rule of our court. We were not bound on our case in chief to prove that we had performed.

The averment in the *narr.* of performance is in the usual form, just as it is usual in assumpsit to aver that the defendant "craftily and subtly intending to deceive and defraud the plaintiff" did not keep his undertaking, and that though frequently requested he has not paid. Yet no one supposes that such an averment compels the

plaintiff to prove it. It is believed to be universally held that mere surplusage never vitiates. If the performance be unnecessarily averred it need not be proved: 1 Saund. 235; Gibbs v. Cannon, 9 S. & R. 198. Now the rule is, that when a covenant goes to only part of the consideration, and a breach may be remedied by action, then it is independent, and not a condition precedent: Boon v. Eyre, 1 H. Black. 273; Bream v. Marsh, 4 Leigh 23; 2 Pars. Con. 531, note; Obermeyer v. Nichols, 6 Binn. 159; Lewis v. Weldon, 3 Rand. 71; McCrelish v. Churchman, 4 Rawle 26. The courts incline to treat covenants as independent, rather than dependent: McShiffory v. Sharon, 1 Phila. R. 496. There was no objection made to the offer to prove the agreement with Reiter as to contribution of cash capital, on the ground that it contradicted the written agreement. That the profits to be gained in the prosecution of the business were a proper element to be taken into consideration in fixing the value of the plaintiff's interest cannot be disputed. If the profits are such as would have accrued and grown out of the contract itself as the direct and immediate results of its fulfilment, then they would form a just and proper item of damages to be recovered against the delinquent party upon a breach of that agreement. These are part and parcel of the contract itself, and must have been in the contemplation of the parties when the agreement was entered into: Fox v. Harding, 7 Cush. 516; Hoy v. Gronoble, 10 Casey 10; Masterton v. Mayor of Brooklyn, 7 Hill 61; Fessler v. Love, 12 Wright 407; Watterson v. A. V. Railroad Co., 24 P. F. Smith 217.

Mr. Justice GREEN delivered the opinion of the court, November 22d 1880.

We are of opinion that several of the assignments of error are sustained, and upon them this case must be reversed. The action was covenant brought by one of two partners upon articles of partnership to recover damages for the wrongful dissolution of the partnership by the defendant. The plea was covenants performed *absque hoc.* In answer to the defendant's fourth point the court charged the jury that it was not necessary, in the first instance, for the plaintiff to prove performance of all the covenants on his part to be performed; and that it was not necessary that the plaintiff should have satisfied the jury that the defendant, without cause, failed to perform his covenants. On the contrary, the court charged that it was necessary for the defendant to prove that, without cause on his part, the plaintiff neglected to keep his covenants. In other words, although the very cause of action was not the mere dissolution, but the *wrongful* dissolution of the partnership by the defendant, the plaintiff was not required to prove it, but the burden was on the defendant to prove a rightful dissolu-

[Reiter *v.* Morton.]

tion.   In this we think there was error.   If a partner dissolves the contract for good cause he has a lawful right to do so.   The technical breach is no breach at all.   To show a breach which entitles the plaintiff to recover he must show a wrongful breach. It is absolutely necessary to allege a wrongful breach in his *narr.*, and that was done in this case, not only in the *narr.*, but also in the affidavit of claim.   Being necessary to aver it, it was also necessary to prove it, unless the defendant by his plea admitted the cause of action.   But he did not do this.   His plea directly put in issue the plaintiff's performance.   It is a very familiar rule, often held by this court, that the plea of covenants performed *absque hoc* puts the plaintiff to proof of performance :   Martin *v.* Hammon, 8 Barr 270; Wilkinson *v.* Turnpike Co., 6 Id. 398; Turnpike Co. *v.* McCullough, 1 Casey 303; Zents *v.* Legnard, 20 P. F. Smith 192.   The court having held that the burden was on the defendant, and not on the plaintiff in the first instance, in their answers to the defendant's fourth point and the plaintiff's fourth point, were in error as complained of in the first and second assignments of error, and these assignments are therefore sustained.   Third error.   We think the defendant was entitled to an unqualified answer in the affirmative to his second point, though perhaps we would not reverse for that reason alone.   Fourth error.   The plaintiff offered and was permitted to read in evidence detached portions of an entire sentence contained in his own affidavit of claim, thus : "That said firm engaged in the business from said date last mentioned and continued in business as a firm until the 14th day of October 1878, when said defendant * * * dissolved said partnership."   In point of fact there is no such sentence in the affidavit of claim, nevertheless the court permitted it to be read just as if it were there and in that exact form.   In reality, in the blank indicated by the stars above, the following words occur in the affidavit of claim, " without any just cause or reason, and without any breach of duty on part of plaintiff to justify the same wrongfully."   Now the affidavit of defence contains no single and independent admission that the firm was dissolved by the defendant's act on October 14th 1878.   The affidavit of defence vehemently denies that there was any wrongful or causeless dissolution of the firm, but on the contrary asserts that the plaintiff violated his covenants in particulars which are specified, and thus compelled a dissolution.   Now the plaintiff, by getting in evidence what purported to be a bare admission of dissolution by the act of the defendant, was enabled to make out a technical breach of the articles of partnership without giving the affidavit of defence or any part of it in evidence, without calling the defendant to prove it, and without putting himself on the stand as a witness to prove it.   Of course if there had been a distinct and independent assertion of dissolution by the act of the

[Reiter *v.* Morton.]

defendant in the affidavit of claim, and a corresponding distinct and independent admission of such dissolution in the affidavit of defence, the defendant would have been obliged to submit to these consequences. But as we have already shown there was no such assertion on the one hand nor admission on the other. To pick out words from different portions of the affidavit of claim and put them together, so as to make a sentence and then offer them as a whole, is certainly not warranted by any precedent or any principle, and we cannot sanction it. The fourth assignment of error is therefore sustained. Fifth, sixth and seventh errors. The sixth article of the partnership agreement provided that the capital of the firm should be $12,000, to be paid in pro rata, as the need of the business should require. Of this sum Reiter was to furnish $8000 and Morton $4000. According to this, whenever payments of capital were required to be paid in, each partner was to contribute his proportionate share of the whole amount. Such was the written agreement arrived at after much preliminary discussion. On the trial the plaintiff offered and was permitted, under objection and exception, to prove a parol agreement made several days before the written agreement was executed, to the effect that if he (Morton) would consent to make the capital stock $12,000 instead of $6000, he (Reiter) would first contribute his share of the capital stock to the full amount before calling upon Morton for anything in excess of the $2000 which he agreed to pay in at the commencement. Without doubt this was a material change in the terms of the written agreement. There was no allegation or proof that it was omitted to be inserted in the written agreement by fraud or mistake, and we are clearly of opinion that it was error to admit the testimony. After it was admitted the court gave it effect in the answers to the first point of the defendant and the second point of the plaintiff, and allowed the jury to find a verdict founded upon their belief in the testimony as to the existence of the parol agreement. Now the defendant alleged as one of the causes justifying him in dissolving the partnership that, in an emergency when additional capital was required to be paid in, he called upon Morton to pay in his proportion of the additional sum required, but that Morton refused to do it, and in consequence of that, certain maturing paper of the firm went to protest. If the parol agreement was to control the rights and duties of the partners, Morton was justified in his refusal, and Reiter was denied the benefit of that refusal as a justifying cause of his act of dissolution. This subject-matter therefore became material to the determination of the issue on trial, and it was allowed by the court to have that effect. In this also there was error. The written agreement was the law of the parties, and could not be altered, changed or modified in this way. The case is so clear a violation

15 NORRIS—16

[Reiter *v.* Morton.]

of the rule against permitting evidence of a previous parol agreement to change the terms of a subsequent written agreement between the parties, that it is unnecessary to cite authorities or engage in any extended reasoning upon the subject. The defendant's first point should have been affirmed without qualification, and the plaintiff's second point should have been refused. The fifth, sixth and seventh assignments of error are sustained. Eighth error. We think the defendant's third point should have been affirmed without qualification, but it was substantially affirmed, and we do not see material error in the additional remarks and illustrations presented in the charge. For the same reason we should not be inclined to reverse for anything contained in the charge in answer to the plaintiff's first point and complained of in the ninth assignment of error. We think the tenth assignment is not sustained. It was competent, in estimating the value of the contract as the measure of damages, to show the actual condition and situation of the business and assets of the firm. Without such testimony it would be difficult, perhaps impossible, for the jury to arrive at any intelligent conclusion as to what damage the plaintiff sustained by the alleged causeless dissolution of the partnership by the defendant. Eleventh error. The answer of the court to the plaintiff's third point as to the measure of damages was in the main correct. But the court went further than the point, and practically gave the jury permission to consider what would be the probable profits of the business if carried on in the future. True they sought to limit the jury as to the manner and extent to which they should allow these possible future profits to influence their present estimate of the value of the contract, but still the door was thrown open and the jury were permitted to wander into the region of speculative and conjectural profits of a manufacturing business. It would be highly dangerous to allow such a latitude of inquiry in such a case. It is absolutely impossible for any human being to say whether a business of this character will be or can be a profitable business during a period of fifteen years. The contingencies which affect that question are so numerous and so various in their character, they depend upon so many and such different influences, causes and events, that no degree of human judgment or foresight can in the least degree predetermine them or their results. A financial panic, which is but a single agency out of many, may convert a prosperous and profitable business into a source of disaster and ruin. So, too, a comparison of the cost of manufacture with the selling price of the article is utterly unreliable, for the simple reason that the elements of the computation on both sides are subject to constant fluctuations. A manufacturing business may be very prosperous one year, and quite ruinous the next, and hence all human estimate as to what will be its condition during a future period of fifteen years

[Reiter v. Morton.]

can only be speculative and conjectural. True the court did not give so unlimited a license to the jury in this case, but from a portion of the language used the jury might well have so inferred. In this there was error, and to this extent the eleventh assignment is sustained. We apprehend that in such an action as this the measure of damages would be the actual money value of the plaintiff's interest in the contract of partnership at the time of the breach. What would the interest sell for to a person willing to buy and having the means to buy? As illustrating this question the actual state and condition of the property, business and assets of the firm at the time, together with proof as to actual results accomplished, whether of profit or loss or both, in the past, would be competent evidence. Beyond this, at least so far as conjectural profits in the future are concerned, it would not be safe to go. In these remarks we do not mean in any way to change or qualify the existing state of the law as to proof of profits in particular cases and in single transactions. There are many such when proof of the profit which might have been realized had there been no breach, is eminently proper. What we decide now is the rule for this particular class of cases. We think it was competent to make the proof offered and rejected in the thirteenth assignment, because it was applying the test of actual experience in the past to the present value of the interest, but as there really was no evidence in the case of future profits, we would not reverse for that reason.

Judgment reversed, and a *venire de novo* awarded