## The Pittsburg Gauge Company v. The Ashton Valve Company, Appellant.

*Principal and agent—Contract—Forfeiture of contract.*

: Where a contract of agency provided that the agent should make reports to his principal at the end of each month, and should make payment for all goods sold at certain specified times, and it appears that in the course of dealing between the parties, the agent did not make his report at the times required, or pay the moneys at the times they were payable, but at subsequent dates, the principal cannot by reason of the agent's default in complying with the letter of the contract, declare a forfeiture of the contract.

*Contract—Breach of contract—Measure of damages.*

Where an agent agrees to sell his principal's goods within a certain district for a given time, and, before the expiration of the time, the principal declares a forfeiture of the contract without sufficient cause, the agent may show, as bearing upon the damages, the extent and volume of the business under his own agency, and the extent and volume of it under the agent appointed in his place.

: Argued Oct. 26, 1897. Appeal, No. 75, Oct. T., 1897, by defendant, from judgment of C. P. No. 1, Allegheny Co., Dec. T., 1895, No. 572, on verdict for plaintiff. Before STER-

RETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Assumpsit for breach of contract. Before SLAGLE, J.

At the trial it appeared that under the terms of the contract between the parties, the plaintiff was made the exclusive agent for handling the defendant's safety valves, gauges, etc., in the territory included within the boundary lines drawn between Erie, Pa., on the north; Altoona, Pa., on the east; Cumberland, Md., on the south, and Columbus, O., on the west, for a period of three years, from June 1, 1894; and was to receive a commission of 10 per centum on all goods sold, whether the orders, within the specified territory, came from the plaintiff or direct from boiler makers or contractors. A reasonable number of goods were to be sent on consignment. All sales from consignments were to be reported at the end of each month, and payments for all goods sold were to be made within ninety days from the 20th of each month in which the sales were made.

The plaintiff continued to act as the agent of the defendant, under this agreement, until November 1, 1895, when the defendant revoked the contract, for the reason that plaintiff had, among other things, failed to report sales from consignments at the end of each month, and make payment for all goods sold within ninety days from the 20th of each month in which the sales were made.

Defendant's points and answers thereto among others were as follows:

1. Under all the evidence the verdict must be for the defendant. *Answer:* Refused. [1]

3. The measure of damages is the amount of commissions (10 per cent) plaintiff would be entitled to receive, under the contract in evidence, on such sales as are proved to have been made or consummated, and also on such sales negotiated, at the time of the alleged breach, so far that it could be ascertained with certainty that they would be completed, and the amount thereof. Mere expectations to sell, without definite assurances of intention to purchase, and opinions as to what sales could or would probably have been made are speculative and cannot be taken into consideration by the jury in estimating the damages sustained by plaintiff. *Answer:* This is refused as a whole.

The first part of it in reference to special sales is not the rule of damages in my judgment. "Mere expectations to sell, with-- out definite assurance of intention to purchase, and opinions as to what sales could or would probably have been made are speculative and cannot be taken into consideration by the jury in estimating the damages sustained by plaintiff." This is affirmed so far as it is a rule for estimating the damages, but what may appear in the evidence as probable may be considered in estimating the value of the contract. [2]

4. There is no evidence in the case as to the value of the business or contract at the time of the alleged breach. The value of the contract, based upon the volume of business before and after the alleged breach, is speculative. *Answer:* This is refused. [3]

The court charged in part as follows :

[Unlike ordinary business, the amount of profit on it is fixed ; upon whatever business it did it was to have 10 per cent compensation. Now, that is not like the sale of ordinary goods. In an ordinary business it depends upon sales, upon the point of manufacture, and upon the profit on the goods sold, whether bought or manufactured, and those things are necessarily indefinite. But here the amount of profit is fixed by the contract at 10 per cent, and the only element of uncertainty in the matter would be the amount of business, which would likely be transacted.] [4]

Verdict and judgment for plaintiff for $3,500. Defendant appealed.

*Errors assigned* were (1–4) above instructions, quoting them.

*James R. Sterrett*, for appellant.—The measure of damages in this case was either ten per cent upon such sales as were proved to have been made, and also on such sales negotiated at the time of the alleged breach, or so far as it could be ascertained with certainty that they would be completed, and the amount, or ten per cent, upon sales made after the alleged breach, during the remaining time that the contract had to run : Howe M. Co. v. Bryson, 44 Ia. 159; Beck v. West & Co., 87 Ala. 213; Brigham & Co. v. Carlisle, 78 Ala. 243 ; Washburn v. Hubbard, 6 Lans. (N. Y.) 11.

*J. R. McCreery*, with him *W. B. Rodgers*, for appellee.—If a course of dealing has caused one of the parties to believe that it was not essential that he should not live up to the letter of the contract, the other party cannot by reason of a failure, without notice, work a forfeiture of the contract: Forsyth v. North American Oil Co., 53 Pa. 168; Ligget v. Smith, 3 Watts, 331; Duffield v. Hue, 129 Pa. 94; Mersey Steel & Iron Co. v. Naylor, 9 Q. B. D. 648; Bispham's Equity, sec. 181; Steiner v. Marks, 172 Pa. 400; Westmoreland Natural Gas Co. v. DeWitt, 130 Pa. 235.

The court below limited recovery to the value of the contract at the time of the breach, excluding altogether speculative profits. The amount of the appellee's compensation was fixed, and the business was established; therefore the breach of the contract damaged the appellee in the amount of its value at the time it was wrongfully taken away: Hoy v. Gronoble, 34 Pa. 9; Masterton v. Mayor of Brooklyn; 7 Hill, 62; Wolf v. Studebaker, 65 Pa. 459; Adams Express Co. v. Egbert, 36 Pa. 360; Pittsburg Coal Co. v. Foster, 59 Pa. 365; Bagley v. Smith, 10 N. Y. 489; 1 Sutherland on Damages, 113; Sedgwick on Damages, sec. 182.

OPINION BY MR. JUSTICE McCOLLUM, January 3, 1898:

The contract between the plaintiff and the defendant was for the term of three years from the 1st of June, 1894. It constituted the former sole agent for the sale of certain goods of the latter within the territory defined by it. The compensation fixed for the services to be rendered was a commission of ten per cent on the amount of the sales. On September 30, 1895, the defendant mailed a notice to the plaintiff of its intention to annul the contract on November 1, which notice was received by the plaintiff on October 2. This intention was carried out in accordance with the notice. During the seventeen months in which the contract was in force the sales amounted to $21,818.17, the commissions to $2,181.82, and the business was increasing.

This suit was brought for the damages the plaintiff sustained by the defendant's annulment or breach of the contract. It resulted on the trial in the court below in a verdict for the plaintiff, and from the judgment entered thereon this appeal

was taken by the defendant. The questions to be considered on the appeal are whether there was error in the refusal of the defendant's first point, and if there was not, whether there was error in the instructions in regard to damages. An affirmance of the point in question would have involved a holding by the court that the annulment of the contract was justified by the conduct of the plaintiff. The evidence did not warrant the ruling called for by the point. It raised a question for the determination of the jury which was fairly submitted to them by the court.

We are not convinced of any error in the answers of the court to the defendant's third and fourth points. We do not think that the portion of the third point which the court refused to affirm presented a measure of damages adapted to the case. Commissions earned before November 1, 1895, are not damages arising from the rescission or breach of the contract, and they are not claimed in this suit. The evidence referred to in the fourth point was competent. It related to the business done by the plaintiff under the contract and to the business done by the defendant's agent in the same district after the annulment of it. It was evidence for the consideration of the jury in ascertaining the value of the contract at the time the defendant wrongfully annulled it. The attention of the jury was directed to all the elements affecting its value and they were instructed that if they found the defendant was not justified in breaking it, the plaintiff was entitled to recover the value of it at the time of the breach. The instructions were clear and impartial, and the defendant has no cause to complain of them, unless it appears that the court erred in holding that the value of the contract was the true measure of the plaintiff's damages. The sole contention of the defendant as to the measure of damage is expressed in the portion of the third point to which reference has already been made. It is a contention which practically denies any liability of the defendant to the plaintiff for damages arising from the breach of the contract. No decision of this Court or of any other court in Pennsylvania has been cited to sustain it. Four decisions of the courts of other states are referred to, but it is not clear that they are appliable to the case at bar which appears to be distinguishable on its facts from the cases in which the decisions were made.

Reiter v. Morton, 96 Pa. 229 was an action brought by one of two partners upon articles of partnership to recover damages for the wrongful dissolution of the partnership by the defendant, and it was held competent in estimating the value of the contract, as a measure of damages, to show the actual condition and situation of the business and assets of the firm, together with proof as to the actual results accomplished in the business before the breach, the true measure being what the interest of the party aggrieved would sell for. This was the measure applied to the case in hand. The evidence affecting the value of the contract as a measure of damage was of the same nature, and admitted for the same purpose, in each case. The evidence in the case at bar did not relate to conjectural or speculative profits, but to the amount of business done, and it showed, as we have already seen, that it was an increasing and prosperous business while the contract was in force. It also showed that within the territory designated by the contract there was a regular and increasing demand for the goods of the defendant which the plaintiff was authorized by the contract to sell. Without further elaboration of the subject our conclusion is that the learned judge of the court below did not err in the instructions as to the measure of damages.

All the assignments are overruled and the judgment is affirmed.