Massachusetts Bonding & Insurance Company, Appellant, *v.* Johnston & Harder, Inc., Appellant.

Argued September 29, 1943. Before MAXEY, C. J.; LINN, STERN, PATTERSON and STEARNE, JJ. Reargued March 20, 1944.

*T. F. Ryan*, with him *J. H. Bialas*, of *Bialas & Ryan*, for plaintiff, appellant, No. 172, appellee, No. 183.

*Roy Rose*, with him *H. Stewart Dunn*, of *Bechman, Dunn, Parker & McGregor*, for defendant, appellant, No. 183, appellee, No. 172.

OPINION BY MR. CHIEF JUSTICE MAXEY, November 22, 1943:

This case has previously been before this court three times. This appeal is from the decree of the court below dated July 23, 1943, based on findings that the plaintiff company's summary cancellation of its contract with defendant, on February 3, 1936, was a breach of its agreement, and that this breach destroyed tangible and intangible assets of Johnston & Harder, Inc., and that the latter was thereby damaged in the sum of $27,500. and is entitled to judgment against the plaintiff in that sum with interest thereon from February 3, 1936, to date.

In the first appeal (330 Pa. 336) we decided that in a proceeding in equity instituted by plaintiff for an accounting by its agent, and the collector [1] of premiums for the agent, in which the defendant agent filed an answer containing, as ancillary to its principal defense, a complaint under new matter and a request for affirmative relief, stating that plaintiff had breached the contract of agency and practiced fraud, and that defendant was entitled to withhold the funds until the damages could be assessed and compensation made for the unlawful cancellation etc. such an answer was proper and responsive to the bill.

In the second appeal (340 Pa. 253), in which the Chancellor made certain findings of fact and conclusions of law, approved by the court en banc, to the effect that the plaintiff was justified under its agency agreement in

[1] Affiliated Insurance Agencies, Inc., was the collector of insurance premiums for Johnston & Harder, Inc.

cancelling the contract summarily, we reversed the decree of the court below because there were no formal findings of fact to support the decree, and we remitted the record to the court below for further proceedings.

In the third appeal (343 Pa. 270), in which the court below held that the contract in question was illegally breached and awarded damages to the defendant, Johnston & Harder, Inc., in the sum of $35,000. on its claim for affirmative relief, we reversed the action of the court below because of the inadequacy of the findings of fact and we remitted the record to the court below for further proceedings in accordance with our opinion.

In our opinion filed in 343 Pa. we made it clear that the two issues as to which adequate findings of fact had to be made were these:

(1) Did the plaintiff justify its summary termination of its agency contract with the defendant?

(2) If it did not, what damages did the defendant sustain as shown "with a fair degree of probability" by the evidence offered?

The burden of proving justification for terminating the agency contract without notice was on the plaintiff. The court below held that this burden was not met. Among the pertinent findings of fact are the following: "11. The plaintiff company never made any written complaint that Johnston and Harder, Inc. was not complying with the contract." "12. On February 3, 1936, at 5:30 P.M. the plaintiff company without any prior notice whatsoever or without stating any reason, notified Johnston & Harder, Inc. that its general agency contract was cancelled." "13. The cancellation notice referred to the defendant's 'violation of your obligations thereunder', i.e. under the contract, but gave no specifications of the alleged violation." In its 36th finding of fact the Chancellor said, inter alia: "There is no claim of any active wrongdoing on the part of Johnston and Harder, Inc. as an entity. The plaintiff company undertakes to justify the summary cancellation because the best interests

of the plaintiff company were not being conserved due to Johnston's dissatisfaction with the Affiliated Insurance Agencies, Inc. contract and the limitation of his income; that the premiums for October, 1935, writings had not been remitted before February 3, 1936; that Johnston and Harder, Inc. were permitting contra accounts; that it also was threatening to obtain a general agency with another surety and insurance company; that there was no prospect that the dissatisfaction of Johnston, as President of Johnston and Harder, Inc., would be corrected. The evidence offered to support these alleged reasons are not sufficient to find as a fact that the plaintiff company was justified in its summary cancellation of the agreement." In his third conclusion of law the Chancellor said: "Johnston and Harder, Inc., in a legal manner and with good faith, substantially carried out and performed all the duties and obligations placed upon it by its general agency contract with the Massachusetts Bonding and Insurance Company from February, 1924 to and including February 3, 1936."

The Court below properly found that there was no design on the part of the plaintiff to seize and confiscate the business of the defendant, and "that J-H, as a corporate entity, never had any difficulties nor was it charged with any variations of its obligations to the plaintiff company."

We do not find in the record any evidence which meets the burden which rested upon the plaintiff of justifying its summary termination of the contract. It is of significance that the plaintiff company "never made any written complaint" of the defendant's non-compliance with the contract and that the notice of the termination of this nineteen year old contract specified no violation of its obligations.

The burden of proving justification for the summary termination of this long-existing and valuable agency contract was not met.

The next question is: Did the defendant sufficiently prove the damages the Court awarded it. In the opinion

filed in this case in 343 Pa. we cited *Weinglass v. Gibson,* 304 Pa. 203, 207, 155 A. 439, to the effect that "Where there is a basis in the evidence for a reasonable computation of the damages suffered considering the nature of the transaction, a verdict may be based thereon, though there may be involved some uncertainty about it", citing numerous cases. We also quoted Williston on Contracts, Revised Edition, Vol. 5, Sec. 1345, p. 3776, as follows: "But though there must be evidence of substantial damage in order to justify recovery of more than a nominal sum, the exact amount need not be shown. Where substantial damage has been suffered, the impossibility of proving its precise limits is no reason for denying substantial damages altogether." Williston in Section 1346A, p. 3781, says: "Various methods are used in proving prospective profits. The evidence of experts if based on anything more than individual opinion or conjecture has also been admitted." Williston also says, Section 1346, p. 3781: "Where a breach of contract involves deprivation of a chance which has value in a business sense, a just reluctance will be felt by most courts to deny altogether the recovery of substantial damages."

F. A. Hewitt, called as an expert witness by the defendant to testify as to its damages, was asked: "What is your opinion as to the value of the business of Johnston and Harder, Inc. on February 3, 1936, as a going concern?" He answered: "I would say it was worth approximately ninety thousand dollars, which would be twice the net commission,—the average annual net commission." He was also asked: "Is 30 days a sufficient time for an agent to secure a new contract, or a new principal, in the event he has notice his contract is to be cancelled at the end of the 30 days?" He answered: "In this particular I think it undoubtedly was sufficient time."

Wallace M. Reid, another expert witness for the defendant, when asked: "What was the value of the busi-

ness of Johnston and Harder, Inc. with the Massachusetts Bonding Company, under their contract on February 3rd, 1936?" answered: "About forty-two thousand dollars." On cross-examination he stated that "any other experienced insurance man who would become interested in the purchase of an agency would require a covenant against competition from the former owner and producer." He said "the main consideration would be the value of the clientele of the office" and by that he meant the expirations information. He was asked: "You have also said that the Agents Association considers that the individual agent is the owner of his business?" A. "Yes." He was asked: "Do you know of a case where somebody paid one and one-half times the figures you have mentioned for a corporate agency, when the only man in it producing went out and competed with the purchaser?" He answered: "Well, I can't just recall one." He based his valuation of $42,000. on one and one-half times the total income for 1935 of the business Johnston and Harder did with the Massachusetts Bonding and Insurance Company.

H. E. McKelvey, another expert called by the defendant to testify as to the value of the agency, testified that it had "a sale value on February 3, 1936 as a going concern of $90,000." On cross-examination the following questions and answers appear: "If you have a going agency and somebody wants to buy it, the main thing that he buys is this list, isn't it?" A. "Yes." Q. "And a chance to solicit the renewals of that business; is that correct?" A. "That is part of what you are buying. . . . If you could not eliminate the competition [of the former owner] you might advise the purchase without the elimination of competition of the former owners. . . . Well, you wouldn't pay a nickel for a business if the owner is going to continue in the same business." Q. "As we understand your former testimony, in thirty days the agent could replace the company?" A. "Yes". Q. "Isn't it your contention in the business that a live,

progressive agent, with no alternative, where there has been a list of insured, can replace the company, perhaps in a day or two?" A. "It couldn't be done." Q. "You say it can be done in thirty days?" A. "Yes. It would be quite inconvenient to do it in that period of time, but it can be done."

In support of the award of damages the brief of the defendant says: "The findings of fact by the Chancellor and affirmed by the Court en banc showing that for the five years prior to February 3rd, 1936, J-H had done an average annual premium business of $243,167.00 with an average net commission return of $45,358.00 for each of said years and that, after February 3, 1936, the business vanished except for a nominal amount, is a complete answer to Appellant's argument that the unlawful cancellation of the contract and unlawful seizure of J-H's business was 'damnum absque injuria'." The weakness of this contention is that it is apparently based on the assumption that plaintiff had *no* right to cancel its agency contract with defendant, whereas it is established that it could do so *upon thirty days' notice*. What we are concerned with here in assessing damages is this: To what extent was the defendant damaged by the cancellation which was unlawful only to the extent that the plaintiff effected the cancellation summarily on February 3, 1936, instead of thirty days later, as it had a clear right to do if on February 3rd it had given notice of the proposed termination thirty days hence? The value of an agency contract with a long period of life before it is one thing; the value of such contract which can be terminated on thirty days' notice is quite another thing. For example, a lease on a building might be very profitable to the lessee as long as the lease exists, but if the lease is terminable by the lessor on thirty days' notice, the fact of such possible termination at any time within thirty days would enter into the sale value of that lease.

It is well settled that the measure of damages for breach of contract is the value of the contract at the

date of cancellation, as we said in *Pittsburg Gauge Co. v. Ashton Valve Co.*, 184 Pa. 36, 39 A. 223, and *Reiter v. Morton*, 96 Pa. 229, but it is equally well settled that in fixing that valuation one must consider the length of time the contract is assured of legal existence. No matter how high the earnings may be under an agency contract, the earnings will end when the contract ends. All of defendant's witnesses as to the value of this contract based their testimony on this agency as a "going concern" on February 3, 1936, without taking into consideration that at the will of the plaintiff it could lawfully cease to "go" thirty days thereafter. The only witness who considered this latter factor was plaintiff's witness, Scott Harris. On direct examination he said he could not place a value on this general agency because he "had not been presented with sufficient data"; there was lacking data as to "the premium cost to the agency or the sub-agent, the production out-go . . . and an analysis of the casualty business [which was the kind of business the agency did for the plaintiff], as to how much is represented by the higher commission income, and how much by the lower commission income class and compensation. . ." When asked on cross-examination what value he would place on this agency based on the net commissions paid to defendant by plaintiff in 1935, of $28,854., he replied: "The valuation, subject to the contingent, upon examination of this business in detail, as to its classification, and as to the other conditions I have mentioned, including the relationship of the Agency with its companies and the accounts receivable and payable now, then there might be the value there of forty-eight to fifty thousand dollars; contingent. . . *It would depend entirely on what the prospectives were for the continuation of this income,* represented partly by the approximately twenty-five per cent on direct business." (Italics supplied.)

The only loss occasioned this defendant Johnston and Harder, Inc. by the plaintiff's failure to give thirty

days' notice of the cancellation of the agency contract which we find warranted by this record is the loss of thirty days' profits on the casualty business which it could write during that period for the plaintiff. If this plaintiff had given this defendant the thirty days' notice provided for in the agency contract the defendant would have no cause of action whatsoever. Its cause of action arises solely from the failure to give this notice. Any damages awarded it must be based solely on that failure.

If on February 3, 1936, plaintiff decided to terminate its agency relationship with the defendant it could then lawfully have done so and defendant's agency relationship with the plaintiff would then be entitled to only thirty days more of existence. Its loss of profits during that period if established "with a fair degree of probability", as we said in our opinion in this case in 343 Pa. at 280, is a basis for the assessment of damages.

Plaintiff maintains that although the cancellation was outright, nevertheless the defendant suffered *no loss* whatsoever because all renewals for the thirty days period had previously been sent out. In support of this it cites the testimony of Hewitt, who was asked: "Isn't this correct, that in January, 1936, all of the renewals for February, 1936, were sent out?" He answered: "I hardly think that is correct. Undoubtedly a great many of them had been written by the office, and possibly given to Mr. Johnston, or may have been mailed to the agents. . . . Normally we tried to keep about a month ahead, as nearly as we can." Mr. Hewitt was one of the directors of Affiliated Insurance Agencies, a co-defendant. His testimony would not warrant a finding, as plaintiff contends that Johnston and Harder, Inc. "got the full benefit of commissions thereon" [February 1936 business]. Plaintiff calls attention to defendant's Exhibit "Y" in support of its contention that no loss was occasioned the defendant in February. This Exhibit "Y" shows the total premiums produced by Johnston and Harder, Inc. for the plaintiff for the years 1930, 1931,

1932, 1933, 1934 and 1935, and for the year 1936 it shows these figures for each individual month, and then the total for the year 1937 and for the year 1938. For January 1936 the total of such premiums was $22,340. and for February 1936 it was $14,396. For March it was $3,509., for April it was $1,029., for May $914., and for June $44. These figures for February indicate that the renewals for February 1936 which had been sent out in January brought in substantial commissions for the defendant; but it seems to us that if on February 3, 1936, the defendant had received notice of the termination of its contract *thirty days* later it could have sent out in February the renewals for March, exactly as it had sent out in January the renewals for February, and it would have received commissions on them. We think the defendant Johnston and Harder, Inc. is fairly entitled to recover the profits which would have resulted to it from the performance by the plaintiff of its promise to give thirty days' notice of the cancellation of the agency contract unless it was terminated summarily for just cause. In other words, the plaintiff illegally deprived this agency of thirty days of existence and its damages are what it could have made under its agency contract with plaintiff during that period.

As to the degree of certainty required in establishing the amount of damages recoverable for breach of contract, Sec. 331, p. 517 of Restatement of Contracts says, in Comment *d;* "If the defendant's breach has prevented the plaintiff from carrying on a well-established business, the amount of profits thereby prevented is often capable of proof with reasonable certainty. On the basis of its past history, a reasonable prediction can be made as to its future." Among the illustrations cited is No. 9 on p. 519, as follows: "A contracts with B to make the latter his exclusive agent for the sale of sewing machines in a specified territory and to supply him with machines at a named price. Upon repudiation by A, B can recover damages measured by the profits that he

would have made had there been no breach, if the amount of such profits is shown with reasonable certainty. Evidence as to the sales and profits made by B before the repudiation or by A and his agents thereafter may be sufficient for this purpose."

This record does not sustain the defendant's claim that the summary cancellation of its agency contract caused it great pecuniary loss by reason of an alleged "taking away" of its "expirations lists". The evidence is that the plaintiff company and the defendant each had such a list of expirations. D. L. Swank, Secretary of Johnston and Harder, Inc., (the official who filed its answer) testified that "when an order is given for the issuance of a policy contract . . . the company furnishes the general agent with policies. . . . One of those copies is sent direct to the home office. The other is filed in the office of the general agent." He also testified that all books, records and data of Johnston and Harder, Inc. had been in his possession, custody and control since February 3, 1936, or in the office of the Affiliated Insurance Agencies, Inc.[2] (i.e. the agent of Johnston and Harder, Inc.). Spencer Welton, Vice-President of the plaintiff company, testified that the expirations information was received by the plaintiff as policies were written from day to day; in other words, that both the agent and the company had this information, but he also testified that such information "is the capital of the agent" and "we do not undertake to use that information". H. P. Johnston, President of defendant company and, on February 3, 1936, the owner of the majority of its stock[3], testified that all the records of Johnston and

[2] This agency, of which Johnston and Harder, Inc., was a stockholder, performed the clerical work of Johnston and Harder, Inc., kept its books, sent out its bills, and collected premiums collectible by Johnston and Harder, Inc. It was the office manager for Johnston and Harder, Inc.

[3] The minute book of the meeting held by the stockholders of Johnston and Harder, Inc., June 5, 1935, shows that the capital stock

Harder, Inc. have been in the hands of the Affiliated Insurance Agencies, Inc. or in the hands of Mr. Swank.

Since the cancellation of the contract did not force the defendant to discontinue the business of writing casualty insurance, and since it represented other companies, and since an established agency can always find insurance companies to represent,[4] we do not find that defendant lost any such "good will" by the cancellation without notice as would justify an award of damages for such loss.

The most that defendant is entitled to under this record is the loss of thirty days' net profits by reason of the failure of the plaintiff to give it due notice of the cancellation. Defendant's Exhibit "X" shows the following net commissions paid to Johnston and Harder, Inc. by the Massachusetts Bonding & Insurance Company for, inter alia, the following years: 1933—$40,048.00; 1934—$32,313.00; 1935—$28,854.00. This makes an average of $33,738.33 for each year, or an average of $2,811.50 for each month. We find that by the plaintiff's cancellation of the agency contract with defendant Johnston and Harder, Inc. without giving the required notice defendant was damaged to the extent of the loss of one month's net profits, or $2,811.50. We will also allow interest on this sum from February 3, 1936, at the rate of $3\frac{1}{2}\%$ per annum. Damages for the detention of money under the circumstances here present should be measured by what the money so detained would probably have produced if it had been paid to those entitled to it. (See our discussion of this question of damages for detention in *Kenin's Trust Estate No. 1*, 343 Pa. 549, at 564.) At p. 560, sec. 71, C.J.S. states this "general

of that company was 500 shares, of which 400 shares were owned by Harrison P. Johnston and were then held by the plaintiff company to secure the payment of the indebtedness due it by Johnston.

[4] F. A. Hewitt, defendant's witness, testified that "a business with this volume [i.e., defendant's volume] would have no difficulty whatever in finding companies to write it on short notice".

rule": "The measure of compensatory damages is such sum as will compensate the person injured for the loss sustained, with the least burden to the wrongdoer consistent with the idea of fair compensation."

Johnston and Harder, Inc. also took an appeal in this case to No. 183, March Term 1943. It claims in its appeal that the amount which the court below awarded it "is only a fraction of the amount placed thereon by the uncontradicted testimony of all the witnesses testifying to value". The appellant defendant's fundamental error as to valuation is that for the opposing party's breach of its promise to give the defendant thirty days' notice of the termination of its agency, the defendant demands as damages what the agency would be worth to a prospective purchaser (1) if the agency had been legally assured of a long tenure and (2) if the defendant guaranteed the purchaser that it would not compete with it in the same field. Its own witness McKelvey, who testified that the agency "as a going concern, had a sale value on February 3, 1936, of $90,000.", stated on cross-examination, as above noted, that "you wouldn't pay a nickel for the business if the owner is going to continue in the same business".

The appeal of Johnston and Harder, Inc., indexed as No. 183, March Term 1943, and taken because the award was not larger, is adjudged to be without merit.

The decree of the court below of July 19, 1943, and which covers the questions raised in both of the above appeals is affirmed, subject to the substantial reduction in the award of damages which we have herein made; costs to be divided between the Massachusetts Bonding & Insurance Company and Johnston and Harder, Inc.