JENET F. MUELLER, ADMINISTRATRIX, ETC., v. THE BETHESDA MINERAL SPRING COMPANY.

*Contract—Mutuality—Measure of damages—Loss of profits—Evidence.*

1. The measure of damages for the breach of a contract by which the plaintiff was made sole agent in certain territory for the sale of mineral water of which the defendant was the sole proprietor, and which it agreed to furnish to the plaintiff at an agreed price, is the profits which the plaintiff might have realized on sales if the defendant had performed the contract; citing *Loud v. Campbell*, 26 Mich. 239; *Leonard v. Beaudry*, 68 Id. 312.

2. Evidence of the amount of water sold by a firm to whom the defendant transferred the agency in violation of the contract is competent to go to the jury on the question of damages.

3. Such a contract is not void for want of mutuality because it does not expressly provide that the agent shall hold out the

goods to the public, and further the interests of the principal; such agreement being implied from the acceptance of the agency and entering upon the same.

Error to Wayne. (Brevoort, J.) Argued June 5, 1891. Decided November 20, 1891.

*Assumpsit.* Plaintiff brings error. Reversed. The facts are stated in the opinion.

*Henry M. Duffield,* for appellant, contended:

1. The three letters established a contract; citing *Emery v. Cobbey,* 27 Neb. 621 (43 N. W. Rep. 410); *Hooker v. Hyde,* 61 Wis. 204; *Crook v. Cowan,* 64 N. C. 743; *Springer v. Cooper,* 11 Bradw. (Ill.) 267; *Railroad Co. v. Pixley,* 19 Barb. 428.

2. In support of right to show the amount of sales made by Bassett & L'Hommedieu, counsel cited *Leonard v. Beaudry,* 68 Mich. 312; *Loud v. Campbell,* 26 Id. 239; *Goodrich v. Hubbard,* 51 Id. 62.

*Conely, Maybury & Lucking,* for defendant, contended:

1. There never was any contract binding upon either party, because:

   *a*—There was no mutuality. Mueller agreed to do nothing and paid nothing; citing *Wilkinson v. Heavenrich,* 58 Mich. 574; *Leather Co. v. Kurtz,* 34 Id. 90, 92; *Pierce v. Pierce,* 55 Id. 629; *Teed v. Marvin,* 41 Id. 216.

   *b*—All of its terms were never definitely settled; citing *Van Valkenburg v. Rogers,* 18 Mich. 180; *Johnson v. Stephenson,* 26 Id. 63; *Ahearn v. Ayres,* 38 Id. 692; *Eggleston v. Wagner,* 46 Id. 610, 620; *McDonald v. Bewick,* 51 Id. 79; *Thomas v. Greenwood,* 69 Id. 215; *Whiteford v. Hitchcock,* 74 Id. 208, 211; *Lumber Co. v. Crosby,* Id. 313, 317; *Bowen v. McCarthy,* 85 Id. 26.

2. The contract alleged was not proved. This action is brought to enforce an executory contract, and in such a case the contract must be accurately and correctly described in the declaration, and the consideration truly set forth, else it will be excluded; citing *Bromley v. Goff,* 75 Mich. 213.

3. The damages claimed were wholly speculative and uncertain. No proof was offered of any advertising; hence the only allegation to be considered is the one regarding the profits on the sale of the water, and these were wholly speculative; citing *Fitzsimmons v. Chapman,* 37 Mich. 139; *Wetmore v. Pattison,* 45 Id.

439; *McKinnon v. McEwan,* 48 Id. 106; *Allis v. McLean,* Id. 431; *Goodrich v. Hubbard,* 51 Id. 63, 69, 70; *Talcott v. Crippen,* 52 Id. 633; *Petrie v. Lane,* 58 Id. 527, 67 Id. 457; *Atkinson v. Morse,* 63 Id. 276; *Leonard v. Beaudry,* 68 Id. 312; *Maltby v. Plummer,* 71 Id. 578.

McGRATH, J.  Plaintiff's intestate had been in the drug business in the city of Detroit for some years, and for a year before the making of the alleged contract sued upon had been selling Bethesda Mineral Spring water, purchased from defendant.  In October, 1887, defendant wrote to plaintiff's intestate the following letter:

"WAUKESHA, WIS., Oct. 3, 1887.
"MR. J. C. MUELLER,
"Detroit, Mich.

"*Dear Sir:*  Inclosed find bill and B. of L. for water sent to-day.  Our traveling man, J. R. Smith, has informed us of your proposition, which we have considered, and have decided to make you the following offer, which we believe is the offer you make us, as we understand it:  We will furnish you the plain water in barrels of 42 gallons, f. o. b. cars here, at $5 per barrel; and if from October 1, 1887, to October 1, 1888, our sales to you shall amount to $500, we will credit your account with $40, which amount, it is understood, you have spent for advertising the water; but, if our sales to you for the above-mentioned period shall not amount to $500, then we are to allow you nothing for advertising, and you are to pay us in full for each and every bill of goods. Of course we will not credit your account with the $40 for advertising until the sales shall have reached the necessary $500.  We believe, if you spend $40 in judicious advertising, that you will have no trouble in bringing up your sales to $500 a year, and thereby make the Bethesda business a profitable one for you as well as for ourselves. If you accept this offer, please advise us by return mail, and this letter will be our agreement with you, as soon as we receive your acceptance of it.  Trusting you will consider the matter favorably, and awaiting your reply, we are,

"Very truly yours, B. M. S. Co.
"HOWE."

To which Mueller replied as follows:

"DETROIT, MICH., Oct. 10, 1887.
"BETHESDA M. SP. CO.,—

"*Gents:* Your favor of the 8th inst. received. Your agent's statement is correct as far as it goes, but it looks like playing Hamlet with the ghost left out. I am to be, and your agent agreed upon, *your sole agent* for city and surrounding parts. I am to receive profits and credit on all plain water sold about here, direct or indirect. Please inform me of your approval of this condition, and I consider the contract ratified.

"Yours truly,
"J. C. MUELLER."

Defendant, in response, sent the following:

"WAUKESHA, WIS., Oct. 12, 1887.
"MR. J. C. MUELLER,
          120 Woodward Ave.,
                    "Detroit, Mich.

"*Dear Sir:* Yours of the 10th at hand. Excuse us for leaving out the 'ghost.' We will make you the sole agent for Detroit, and for all places within a radius of 25 miles from Detroit; and we will ship no plain water to any one in your territory but yourself. Trusting that this makes our offer all satisfactory and complete, we are,

"Very truly yours, B. M. S. Co.
"M."

No further correspondence was had between the parties until May, 1888, when defendant wrote the following letters to Mueller:

"WAUKESHA, WIS., May 9, 1888.
"MR. J. C. MUELLER,
          Detroit, Mich.

"*Dear Sir:* We have just given Bassett & L'Hommedieu, of your city, the sole agency for Detroit. There was about one-tenth of the water being sold in Detroit that there should be, and we felt it but justice to ourselves to establish an agency that would push the water. We trust you will favor them with your order when in need of Bethesda, and, thanking you for your past patronage, we are,

"Very truly yours, B. M. S. Co.
"H."

"WAUKESHA, WIS., May 9.
"MR. J. C. MUELLER,
        Detroit, Mich.

*"Dear Sir:* Yours of the 9th at hand. We will be .
unable to fill your order, as we wrote you yesterday that
we had made other engagements. Bassett & L'Homme-
dieu's report that they are sole agents is true. There is
no treachery about it. We were not doing the business in
Detroit that we should do, and could not induce you to
push the water, or handle our water in one-half gallons,
so we thought it for our interest to make a change; and
you, as a business man, know that it is for the interest
of every concern to do all the business they can.
                "Very truly, B. M. S. Co.
                                "H."

Mueller died some time after this suit was commenced.
The defendant contends:

1. That the contract, as modified by defendant's letter
of October 12, 1887, was never accepted by Mueller.
This objection is untenable. Mueller entered upon the
agency at once, and acted in that capacity until May,
1888, when defendant appointed another sole agent in
Mueller's stead, giving as a reason therefor that Mueller
was not pushing the sale of the mineral water.

2. That the contract was void for want of mutuality.
Neither is this objection well taken. The company
appointed Mueller as its sole agent for Detroit and
vicinity, agreeing that, if he would take the agency, it
would sell him the water at a certain figure, allow him
$40 on his advertising bill in case his purchases reached
a named amount, and that it would ship no plain water
to any other person within certain territory. Mueller
had been handling these goods, and the appointment was
made in response to a proposition on Mueller's part,
referred to in defendant's letter of October 3, 1887, to
act as agent of the company. He agreed to act as sole
agent of the company for the sale of these goods at
Detroit. By the acceptance of that agency he agreed to

do all that its acceptance implied, viz., to hold out the goods to the public, and to further the interests of his principal. One who receives goods on commission does not usually expressly agree to do anything, but there is in this class of cases an implied agreement, sufficient to support the promise and contract. If the interest of defendant here had been neglected, defendant was entitled to show that upon the trial.

Plaintiff called as a witness, Arthur Bassett, one of the members of the firm to which defendant had transferred the agency, and sought to show by him how much of the water had been disposed of by that firm from May 9, 1888, to October 12, 1888, but the court excluded the testimony. This was error. It was shown that, while this water was sold in bulk by the gallon, yet it was sold largely by the glass from a fountain as an incident of the retail drug business; that the best season for its sale was just opening when the agency was taken away from plaintiff's intestate. The measure of plaintiff's damages was the profits which Mueller might have realized if defendant had performed its contract. *Loud v. Campbell*, 26 Mich. 239; *Leonard v. Beaudry*, 68 Id 312. While it may be true that Mueller would not have disposed of as much of the article as this firm did, yet the amount of their sales, while not conclusive upon defendant, was competent evidence to go to the jury upon the question of plaintiff's damages. It would have been proper to draw out upon cross-examination what special effort had been made by this firm to introduce and push this commodity, but the sales for the season named may have been greater than for the previous season because of a demand created by what Mueller did, rather than by any special effort by this firm. Here was a commodity of which defendant was the sole proprietor, and for which Mueller was made sole agent. All of this commodity

reaching the territory named came from defendant directly to Mueller, and through his agency. The agency of the firm of Bassett & L'Hommedieu succeeded that of Mueller. They took it up where he left off, and continued it for the five months for which he was to enjoy its fruits. Proof as to the amount actually sold by them for that five months cannot be said to be speculative.

After the court excluded this testimony plaintiff rested, and on defendant's motion the court directed a verdict for defendant.

The judgment is reversed, and a new trial ordered, with costs to plaintiff.

The other Justices concurred.