Argued April 2, decided April 8, 1913.

**BREDEMEIER *v*. PACIFIC SUPPLY CO.**\*

(131 Pac. 312.)

**Damages—Breach of Contract—Profits.**

1. In general, lost profits cannot be recovered as damages for breach of contract, unless they entered into the contract itself, and were within the contemplation of the parties at the time the contract was executed.

**Damages—Breach of Contract—Speculative and Contingent Damages.**

2. Damages for breach of contract, which are speculative and so dependent on numerous and changing contingencies that their amount is not susceptible of actual proof with any reasonable degree of certainty, cannot be recovered.

**Damages—Uncertain and Contingent Losses—Amount of Benefit.**

3. The rule that damages which are uncertain or contingent cannot be recovered for breach of contract does not apply to an uncertainty as to the amount of benefit or gain to be derived from their performance, but only to an uncertainty or contingency as to whether any such gain or benefit would be derived.

**Principal and Agent—Sales Agency Contract—Breach—Loss of Profits.**

4. Where a contract gave plaintiffs the exclusive right or agency to sell a washing powder for a given time within a specified district, loss of profits would be held to have been within the contemplation of the parties as an element of damage following from defendant's breach thereof, and hence defendant could not escape liability because the losses sustained and the gains prevented were to some extent uncertain and problematical.

**Damages—Breach of Contract—Profits—Ascertainment.**

5. Where plaintiff, in an action for breach of contract, is entitled to recover for loss of profits, the amount of such loss is to be determined by the jury from the nature of the contract, the circumstances surrounding and flowing from its breach, and the consequences naturally and plainly traceable thereto.

**Damages—Breach.**

6. Where a contract is repudiated, the compensation of the complaining party should be the value of the contract.

**Principal and Agent—Contract—Breach—Profits—Evidence.**

7. Where plaintiffs were entitled to recover for loss of profits for breach of an exclusive agency contract for the sale of a washing compound in a specified district, and had pleaded and proved the expenses incurred in advertising the compound and establishing a market therefor, evidence as to the cost of performing such contract after the market was established, as compared with the expenses during the early part of the business, was admissible.

Sig. 19

Principal and Agent—Agency—Contract—Breach—Evidence.

8. In an action for the breach of an exclusive agency contract for the sale of a washing compound, evidence of the quantity of the goods sold in the contract territory by defendant's successor, after repudiation of the contract and before the trial, was admissible.

---

*The authorities on the question of loss of profits as element of damages for breach of contract are collated in an elaborate note in 53 L. R. A. 34. And on the question of loss of profits of sale or purchase as element of damages, see extensive note in 52 L. R. A. 209.        REPORTER.

From Multnomah: HENRY E. McGINN, Judge.

Statement by MR. JUSTICE BEAN.

This is an action by Fred A. Bredemeier and George Menzel against the Pacific Supply Company, a corporation, for damages for the breach of a contract. The cause was tried before a jury, and a verdict rendered in favor of plaintiff for the sum of $2,655. From a resulting judgment, defendant appeals.

The facts, so far as deemed material to determine the controversy, are as follows: On the 12th day of October, 1910, plaintiffs and defendant entered into a contract, by the terms of which the plaintiffs were to have the exclusive right within the State of Oregon, for the period of 10 years, to sell a certain washing compound which was a patented article manufactured solely by the defendant in the City of Portland, Oregon. The defendant agreed to furnish plaintiffs any quantity of the compound, in 15 and 25-cent packages, at a stipulated price. The plaintiffs, in turn, promised to purchase from the defendant an average of 100 cases per month for the first year, 150 cases per month for the second year, and 200 cases per month for each of the remaining years of the contract. It was expressly stipulated that, if the plaintiffs failed to buy the amount they agreed to purchase each year, the defendant should have the option of canceling the contract.

It appears that the plaintiffs began to carry out their part of the contract soon after it was executed; that they had demonstrators in the stores in Portland exhibiting the article to the public, and salesmen on the road advertising and selling the same; that the defendant was unable to furnish plaintiffs with packages of the size ordered, and that they were compelled to wait for goods sometimes for a month or so; that plaintiffs obtained several orders for goods, and arranged to place the same with the wholesale houses to supply to retailers at a profit of 94 cents per case; that, on account of the fact that defendant did not supply plaintiffs with the goods, they lost the sale of such orders as they had taken, and also lost new business; that the plaintiffs expended the sum of $2,154.19 in advertising, demonstrating, and establishing a market for the compound, and selling 413 cases.

On February 1, 1911, or about that time, the Pacific Specialty Company was organized to take over the business of the Pacific Supply Company. On March 1, 1911, the defendant sent letters to the wholesale houses which were handling the compound for the plaintiffs, informing them that the contract was canceled, and that the defendant would sell the goods direct from the factory. On March 4, 1911, defendant notified the plaintiffs that the contract was annulled for the reason that they had failed to comply with the conditions of the same. During 1911 the Pacific Specialty Company sold 768 cases of the compound in that market.                    AFFIRMED.

For appellant there was a brief over the names of *Messrs. Johnson & Stout,* and *Mr. Leroy Lomax,* with an oral argument by *Mr. Lomax.*

For respondents there was a brief over the names of *Mr. A. E. Clark, Mr. R. F. Peters* and *Mr. J. H. Middleton,* with an oral argument by *Mr. Peters.*

MR. JUSTICE BEAN delivered the opinion of the court.

At the close of plaintiffs' evidence, defendant moved the court for a nonsuit, which was refused, and the defendant assigns such refusal as error. Counsel for defendant also objected and excepted to certain evidence introduced, for the reason that the same tended to show merely speculative, remote, and conjectural damages, and assigns the introduction of such evidence as error.

1. The general rule is that, in order to recover profits in case of a breach of contract, such profits must have been within the contemplation of the parties at the time of the execution of the contract; and, where such profits do not enter into the contract itself, they will be denied. Anticipated damages, different from those which would ordinarily be sustained, are not always recoverable, but will only be awarded when, in view of special circumstances, they may be regarded as the natural and direct result of the breach, and are not problematical, but are capable of being foreseen and of being estimated with reasonable accuracy.

2. Where the damages claimed are so speculative and dependent upon numerous and changing contingencies that their amount is not suspectible of actual proof with any reasonable degree of certainty, no recovery can be had. 13 Cyc. 36; *Wisner* v. *Barber,* 10 Or. 342; *Hoskins* v. *Scott,* 52 Or. 271, 276 (96 Pac. 1112) ; *Hichhorn* v. *Bradley,* 117 Iowa, 130 (90 N. W. 592).

3. The rule that damages which are uncertain or contingent cannot be recovered does not apply to an uncertainty as to the amount of the benefit or gain to be derived from performance, but to an uncertainty or contingency as to whether any such gain or benefit would be derived at all. *Blagen* v. *Thompson,* 23 Or. 239, 240 (31 Pac. 647: 18 L. R. A. 315) ; *Wakeman* v. *Wheeler & Wilson Co.,* 101 N. Y. 205 (4 N. E. 264: 54 Am. Rep. 676).

4. When a contract for the exclusive right or agency to sell a certain article for a given time within a limited district is broken, one of the elements of damage is lost profits. *Mueller* v. *Bethesda Mineral Spring Co.,* 88 Mich. 390 (50 N. W. 319); *Hitchhorn* v. *Bradley,* 117 Iowa, 130 (90 N. W. 592).

In the case at bar, the damages sustained by plaintiffs as to the profits are such as may reasonably be supposed to have been within the contemplation of the parties to the agreement at the time of the execution thereof, and the proximate and natural consequences of a breach by defendant. This follows, in view of the facts surrounding the execution of the contract, as shown by the evidence, and from the very nature of the contract itself. Such profits are the direct and legitimate fruits of the contract. It clearly appears that the agreement was made with the intention that the plaintiffs should sell the goods for a profit. They were not to be kept for ornament, nor even in stock. The profit from sales which were prevented by the annulling of the contract by defendant, and which can be ascertained with reasonable certainty, are proper elements for the consideration of the jury in determining the value of a contract pertaining to the sale of a commodity of the kind mentioned. A person violating his contract should not be permitted to entirely escape liability for the reason that the amount of damages which he has caused is uncertain. Losses sustained and gains prevented are proper elements of damage. As they are prospective, they must, to some extent, be uncertain and problematical.

5. They should be determined by the jury from the nature of the contract, and the circumstances surrounding and following its breach, and the consequences naturally and plainly traceable to such breach, under proper instructions.

6. When a contract is repudiated, the compensation of

the party complaining of the breach should be the value of the contract. *Wakeman* v. *Wheeler & Wilson Mfg. Co.,* 101 N. Y. 205 (4 N. E. 264: 54 Am. Rep. 676).

In the case of *Mueller* v. *Bethesda Mineral Spring Co.,* 88 Mich. 390 (50 N. W. 319), the company entered into a contract with Mueller by which it made him the exclusive agent for its mineral waters in the City of Detroit and vicinity, for the period of one year, and, before the year expired, the company breached the contract. Mueller sued for damages, alleging loss of profits. The Supreme Court, in passing upon the measure of damages (88 Mich. 395 [50 N. W. 321] of the opinion), said: "The measure of plaintiff's damages was the profits which Mueller might have realized if defendant had performed its contract." The motion for a nonsuit was properly overruled.

7. The expenses incurred by plaintiffs in advertising the compound, and in establishing a market for the same, were specially pleaded in the complaint. The evidence of plaintiffs tended to sustain the allegation. Defendant objected and excepted to evidence tending to show what the expenses would be for performing the contract after a market was established, as compared to the expenses during the first part of the business. This evidence was properly admitted to be considered by the jury, with the other facts, in estimating the value of the contract or the reasonable amount of damage. *Wells* v. *National Life Association of Hartford,* 99 Fed. 222, 236 (39 C. C. A. 476: 53 L. R. A. 33).

8. It is claimed that there was error in allowing plaintiff to show the number of cases of the goods sold in Oregon by the defendant's successor, after the repudiation of the contract and before the trial. This evidence was admissible. When a contract for the exclusive right or agency to sell an article within a given territory for a given time is broken by the principal, evidence of later sales by other

agents or by the principal, within the life of the contract, in the same territory, in an action by the agent, is properly admitted to enable the jury to determine the value of the contract or loss of profits. *Emerson* v. *Pac. Coast & N. Co.,* 96 Minn. 1 (104 N. W. 573: 1 L. R. A. [N. S.] 445, 450: 113 Am. St. Rep. 603: 6 Ann. Cas. 973) ; *Pittsburg Gauge Co.* v. *Ashton Valve Co.,* 184 Pa. 36 (39 Atl. 223, 224) ; *Wakeman* v. *Wheeler & Wilson Mfg. Co.,* 101 N. Y. 205 (4 N. E. 264: 54 Am. Rep. 676).

From the amount of the verdict, the jury evidently found in favor of plaintiffs for a portion of the extra expenses incurred in creating a market for the goods, and for a loss of profits which plaintiffs could have obtained up to the time of trial.

Finding no error in the record, the judgment of the lower court is affirmed.                    AFFIRMED.