Argued April 9, reversed and remanded June 24, rehearing denied September 30, motion to argue petition for rehearing denied November 12, 1924.

## H. B. WATSON v. OREGON MOLINE PLOW CO.

(227 Pac. 278.)

**Principal and Agent—Telegram and Confirming Letter Held to Establish Acceptance of Contract Proposal.**

1. Telegram and confirming letter *held* an acceptance by an implement manufacturer of retailer's contract proposal.

**Partnership—Single Partner Held Without Power to Rescind Contract Which was Basis of Entire Firm Business.**

2.   Where a contract for the purchase of farm implements constituted the basis of the entire business of a retailing copartnership, one member of the firm could not rescind the contract without consent of the others.

**Principal and Agent—Refusal to Make Shipments Held Breach of Contract Excusing Other Party from Further Performance.**

3.   Implement manufacturer's refusal to make shipments under contract *held* breach, excusing retailer from further performance or demand for performance, and creating right of action for at least nominal damages.

**Sales—Measure of Damages for Seller's Breach of Contract Ordinarily Difference Between Contract and Market Price.**

4.   Ordinarily measure of damages for seller's breach, if the value of the commodity is fixed by free trading upon an open market, is difference between the contract price and the market price.

**Principal and Agent—Profits Which Agent Reasonably Certain to have Realized Measure of Damages for Breach of Contract Involving Loss of Anticipated Profits.**

5.   For breach by principal of exclusive agency contract to sell an article produced and controlled by principal, the measure of damages is, not the difference between contract and market price, but profits which it is reasonably certain agent might have realized had principal performed.

**Principal and Agent—Facts Giving Rise to Special Damages Consisting of Lost Profits must be Specifically Pleaded and Proved to Warrant Recovery.**

6.   On principal's breach of exclusive selling agency contract, before special damages consisting of lost profits equal to amount of commissions that would have been earned can be recovered, facts constituting same must be specifically pleaded and proof furnished showing with reasonable certainty that such gains or profits were prevented by acts of defendant.

**Principal and Agent—Recovery of Anticipated Profits Unwarranted, in Absence of Proof Establishing With Reasonable Certainty Same Would have been Earned.**

7.   In action by retail implement dealer for manufacturer's breach of contract to furnish tractors, recovery of anticipated profits *held* unwarranted, in absence of proof establishing with reasonable certainty that sales would have been made and commissions earned by plaintiff if defendant had performed.

---

4.   Loss of profits as element of damages, see notes in 60 **Am. Rep.** 488; 52 **L. R. A.** 209; 53 **L. R. A.** 33; 8 **L. R. A.** (**N. S.**) 255.
See 2 **C. J.**, pp. 432, 788, 790; 17 **C. J.**, p. 856; 30 **Cyc.**, pp. 491, 495, 661; 35 **Cyc.**, p. 633.

Damages—Recovery for Stoppage of Contract Limited to Expenditures Unless Probable Profits in Excess of Same Shown.

8. Though party injured by stoppage of contract is entitled to recover amount expended in reliance thereon, where both loss of profits and expenditures are sought, recovery must be confined to latter, unless probable profits in excess of that amount are shown.

From Multnomah: FRED W. WILSON, Judge.

Department 2.

REVERSED AND REMANDED.    REHEARING DENIED.

For appellant there was a brief over the name of *Messrs. Manning & Harvey,* with an oral argument by *Mr. John Manning.*

For respondent there was a brief over the names of *Mr. E. K. Oppenheimer* and *Messrs. Wilbur, Beckett & Howell,* with an oral argument by *Mr. Oppenheimer.*

McCOURT, J.—This is an action to recover damages for the breach of a contract for the sale and purchase of ten farm tractors and equipment pertaining thereto, and granting to the Western Implement & Seed Co., a copartnership in which plaintiff was a partner, the exclusive right to sell in a designated territory, tractors and farm machinery manufactured by the Moline Plow Company of Moline, Illinois. In his complaint, plaintiff charged that defendant at the time part performance was due upon its part wrongfully repudiated the contract in its entirety; plaintiff demanded damages in the amounts following: $115 expended in preparing to sell tractors, for stationery, advertising and demonstrating the machines; $1,500 for injury to business; and $537.20 upon each tractor, or a total of $5,372, the profits plaintiff estimated the copartnership would

have realized if it had not been prevented by defendant from performing the contract.

Defendant, by its answer, denied all the material allegations of plaintiff's complaint, except the incorporation of defendant, and pleaded affirmatively, among other things: (1) That the writing referred to in plaintiff's complaint, was merely a proposal made by the Western Implement & Seed Co., to defendant for a dealer's contract and the purchase of tractors; which proposal was never accepted by defendant; (2) that the alleged contract was abandoned by the partnership; and (3) that the Western Implement & Seed Co., bought and sold tractors from others to supply its customers, and could have secured for sale tractors of other makes, which it could have sold at as great or greater profit than it could have realized under the contract sued on.

The new matter in the answer was denied in plaintiff's reply. A jury trial resulted in a verdict and judgment in favor of plaintiff for $3,612.

Defendant appeals, and in its assignment of errors complains of the action of the trial court: (1) in overruling its motion for nonsuit seasonably interposed; (2) in admitting certain evidence; (3) in excluding other evidence; and (4) in giving certain specified instructions to the jury.

The decision of the questions raised by defendant's assignments of error requires a brief review of the evidence adduced at the trial. Prior to August 9, 1918, and thereafter up to September 1, 1918, the plaintiff, H. B. Watson, J. D. Hansen and Sherrill Fleming were employed by Frank Everett & Co., a concern doing hardware and implement business at Chehalis, Washington. Watson was employed as manager of, and Hansen held stock to the amount of $5,000, in Frank Everett & Co. That concern was

then the authorized dealer and distributor in the immediate territory of the agricultural implements manufactured by the Moline Plow Company of Moline, Illinois.

On the ninth day of August, 1918, Watson, Hansen and Fleming entered into an agreement of copartnership for the purpose of engaging in the implement and farm supply business at Chehalis, Washington, the same to be conducted under the active supervision of Watson. The partnership agreement provided that the partners should furnish capital in the following amounts: Watson, $400; Hansen, $1,000; Fleming, $1,000; and that Hansen should loan the firm approximately $3,000. They adopted the firm name of "Western Implement & Seed Co." Whether any of the above sums of money were advanced or loaned to the partnership does not appear from the evidence.

The defendant is an Oregon corporation, engaged in the business of distributing throughout the States of Oregon, Washington and Idaho, farm machinery and agricultural implements manufactured by the Moline Plow Company of Moline, Illinois.

After some negotiations with one E. E. Gilbert, a traveling salesman employed by defendant, plaintiff acting in behalf of the partnership, on August 27, 1918, forwarded to defendant, at its office in Spokane, Washington, the check of plaintiff drawn upon the Security State Bank of Chehalis, Washington, for $300 in favor of defendant, together with a proposed contract, the form and terms of which material to this controversy, follow:

"Moline–Universal Tractor, Model D
Sales Contract.

"Oregon Moline Plow Co. (Incorporated), of Spokane, hereinafter called 'Company' and Western Seed and Implement of Chehalis, Wn. in the County

of Lewis and State of Wash., hereinafter called 'Dealer' contract this 27th day of —— A. D. 191—, as follows:

"The Company sells and the Dealer buys the goods ordered in this contract, subject to the conditions hereinafter enumerated to be shipped according to schedule shown herein.

"The Dealer agrees to sell said tractors in the following described territory only, Lewis, Pacific, Cowlitz, Thurston and Grays Harbor Counties inclusive, and herewith deposits with the Company $300.00; said deposit to be refunded in cash to the Dealer by the Company when the last of the above ordered tractors shall have been shipped and paid for and to be retained by the Company as liquidated damages in case the Dealer fails to accept and pay for all tractors purchased herein. If the Dealer fails to accept shipments as made each per schedule the Company may, at its option, cancel this contract and retain said deposit as liquidated damages. * *

"The prices named herein apply to this order only. Subsequent orders at prices then prevailing.

"The Dealer agrees that in case he fails to furnish in any month shipping instructions for the number of tractors specified for that month in the schedule of shipments below specified, Company may, at its option, ship said tractors, on which no shipping instructions have been received, to Dealer. On such shipment sight draft to be made on Dealer through Security State Bank, Chehalis, Wash., which is authorized to pay same on presentation of draft with bill of lading attached.

"Said Company will allow said Dealer a discount of 15% from above specified prices on each tractor shipped and paid for under this contract. An additional discount of 5% from the specified prices on each tractor will be allowed Dealer by Company when three tractors have been shipped and paid for under this contract; such 5% additional discount will not be allowed unless three tractors have been shipped and paid for. A discount of 20% will be allowed by Company to Dealer from above specified

prices on each tractor over three in number, shipped and paid for under this contract. Discounts are payable only to Dealer when the purchase price is paid in full; no discount will be allowed Dealer if tractor is refused by purchaser. The discounts specified herein include and are in full for all compensation for services of Dealer, both before and after the sale, cost of unloading, handling, telegraphing, telephoning, exchange, advertising or any other expense or outlay by the Dealer in connection with his agency. Said Dealer agrees as follows:

"1. To use his best efforts in canvassing and working for the sale of Moline-Universal Tractors and recommending them in preference to all others, and will furnish a list of all prospective purchasers of tractors to the Company, and will report within thirty days on all prospects for sales referred to him by the Company.

"2. To take from each customer an order on the printed form furnished by the Company, which form contains a written warranty printed thereon and said Dealer will make no other warranty; to send to Company original order blanks with shipping instructions, all terms and agreements thereon.

"3. To offer, advertise, and sell the tractor on terms which shall provide that tractor shall be shipped with bill of lading attached to sight draft for the price of said tractor with exchange and collection charges. Prices F. O. B. cars, Moline, Illinois; purchaser to pay back freight in case shipment is made from any point except Moline, Illinois. Tractors to be shipped in the name of the Company and title to remain vested in it until fully paid, when tractor becomes the property of the purchaser. If purchaser does not pay the sight draft covering balance of purchase price promptly, then the payment accompanying order on the deposit is forfeited and shall be retained by the Company as agreed and liquidated damages.

"4. To accept the general guarantee of the Company as its warranty on the tractor, which warranty

is printed elsewhere in this contract and is made a part of this contract.

"5. In case factory expert's services are required on any tractor, said Dealer shall notify the Company and give it ample time to send an expert to demonstrate the tractor and agrees that in case it is shown that the trouble was due to the operator and not in the tractor, the Dealer agrees to pay the Company five dollars ($5.00) per day for the expert's time and services, together with his necessary railroad and hotel expenses for his trip from and back to Moline, Illinois. To keep in his employ during the period of this contract an expert, competent to render all services in connection therewith; said expert to accompany Company's factory expert when said factory expert is used on mechanical or educational services.

"6. Not to sell tractors outside of territory assigned above, and if tractor is sold to be used outside of said territory, said Dealer shall forfeit his discount and agrees that such discount shall be paid to Dealer to whom such territory has been allotted.

"7. To make full payment in all cases for each tractor to the Company and to receive from the Company cash discount as set forth herein after sale and delivery is completed and cash paid to Company.

"8. To carry in stock at all times during the period of this contract tractor repairs to the value of at least $15.00 per tractor included in this contract. To pay cash in all cases for extras or repair parts; if cash does not accompany order, shipments to be made C. O. D. and billed at list prices as shown in repair list of Company, F. O. B. Moline, Illinois. The Dealer to be allowed discount of 20% from list price on repair parts of tractor only, to be credited him when cash is received by Company. Dealer will pay all expenses including return charges on unclaimed or refused shipments.

"9. In case Dealer does not canvass for trade and push the sale of Moline-Universal Tractors in preference to all others, as agreed, the Company reserves

the right to canvass and sell in territory allotted to Dealer, in which case Company will allow no commissions to Dealer except on such sales as he has given assistance in securing.

"10. That he shall have no power to incur any indebtedness or liability in the name of the Company. * * *

| Said Dealer orders herewith | To be shipped as follows on or before: | | | | | |
|---|---|---|---|---|---|---|
| | Price | Sept. 1, 1918. | Oct. 1, 1918. | Nov. 1, 1918. | Dec. 1, 1918. | Feb. 1, 1918. |
| 10  Moline-Universal  Tractor with  M.  U.  T.  Two-Plow Gang,  etc. | $1385.00 | 3 | 3 | 1 | 1 | 2 |
| * * * * * | * | * | * | * | * | * |
| 10  Moline-Universal  Tractor Rear  Carrying  Truck | 50.00 | 3 | 3 | 1 | 1 | 2 |
| 10 'pr.  Moline-Universal  Extension  Rims,  etc. | 25.00 | 3 | 3 | 1 | 1 | 2 |
| 10  set  (12)  plow  wheel  lugs | | 3 | 3 | 1 | 1 | 2 |
| * * * * * | * | * | * | * | * | * |
| Extras 10  Moline-Universal  Tractor Rider  Bars  when  necessary to  furnish,  add  to  priced | 6.00 | 3 | 3 | 1 | 1 | 2 |
| * * * * * | * | * | * | * | * | * |

"This contract shall be terminated when last tractor herein ordered has been shipped (unless additional orders have been placed and accepted by Company), or expires by limitation on July 31st, 1919.

"This contract shall not be valid and binding until approved by local manager of the Company, none of its provisions shall be subsequently changed without the written approval of said local manager.

"Approved:

"Oregon Moline Plow Co,
        "By E. E. Gilbert.
"Western Implement & Seed Co.,
                "Dealer.
    "By H. B. Watson."

Watson and Fleming severed their connection with Frank Everett & Co. on August 31, 1918, but Hansen remained in the employ of that concern.

R. S. Townsend was the manager of defendant at Spokane. He was authorized, and it was his duty, to approve or reject the foregoing proposed contract. On September 3, 1918, Townsend on behalf of defendant, wrote a letter to the Western Implement & Seed Co., in which he referred to the above order for tractors as follows:

"We thank you kindly, Mr. Watson, for the orders which you have given us, such as tractor order and the order above mentioned. These we assure you we appreciate, and trust that the Western Implt. & Seed Co. will be very successful indeed right from the start."

On September 3, 1918, before receiving the foregoing letter, Watson, in behalf of the Western Implement & Seed Co., telegraphed to defendant as follows:

"Please wire if contract accepted. If accepted will demonstrate tractor at Elma Fair tomorrow."

On the same day, Townsend, in behalf of defendant, replied by telegram to the above message as follows:

"Contract will be accepted according to terms of same regarding shipments."

On September 4, 1918, defendant communicated by letter to the Western Implement & Seed Co., as follows:

"Yesterday we received your telegram as follows:

" 'Please wire if contract accepted. If accepted will demonstrate tractor at Elma Fair Tomorrow.'

"We consequently wired you in reply as per confirmation enclosed as follows:

" 'Contract will be accepted according to terms of same regarding shipments.'

"It was our understanding at the time that we received your tractor contract that you wished to give us shipping orders covering tractors, and that we were not to make any shipments on the contract until we had received shipping instructions.

"This you understand, Mr. Watson, would entirely do away with our contract and we could not accept same with this understanding. Of course, if you wished us to ship the tractors differently than as provided in the contract, all that you would need to do would be to furnish us with shipping orders to be made during the month that the contract calls for certain shipments and these shipping orders would, of course, be respected, but in case you did not furnish us with other shipping orders than those contained in the contract, we would expect to make shipments in strict accordance with the contract unless, of course, something which we do not know of at this time should come up and which should change matters in this regard. We, at least, would want the privilege of making shipments if we cared to, if possible.

"We trust we will hear from you in regard to this matter at an early date.

"Yours truly,

"Oregon Moline Plow Company,

"R. S. Townsend, Manager."

On September 12, 1918, Townsend, in behalf of the defendant, in a letter to the Western Implement & Seed Co., stated:

"However, you have not as yet answered our letter of September 4th with regard to the matter of terms or shipping dates in tractor contract which you gave our Mr. Gilbert on September 27th.

"Will you be kind enough to give us an answer to this letter which will settle matters regarding which we have been writing in this regard?

"Thanking you for your promptness in this, we are

"Yours truly,"

On September 14, 1918, the Western Implement &
Seed Co. wrote the following letter to defendant:

"Implements.       Building Material.           Seeds.
            "Moline Universal Tractors.
         "WESTERN IMPLEMENT AND SEED Co.
"Phone 86
                     "Chehalis, Wash., Sept. 14, 1918.
"Oregon Moline Plow Co.
     "Spokane, Wn.
"Gentlemen:

"Your letter of Sept. 12th regarding shipping dates
of tractors at hand, and in connection with same we
advise that allotment of tractors as listed on the
contract sent for approval is O. K. with us.

"Mr. Watson who is familiar with all of the de-
tails of the deal is in the Grays Harbor country, and
has sent in one order for a tractor today and ex-
pects to finish another Monday.   On his return he will
take up with you personally any details which are
yet unsettled.

"We have been expecting the return of our tractor
contract approved, and ask that this be given your
attention.

"Ship to us (W. I. & S. Co.) at Satsop, Wn. one
tractor complete with plows.   Draft on us through
the Montesano State Bank at Montesano.   We en-
close our check for deposit of $100.00.

"We also enclose trade acceptance for tractor
disc etc.

"Notify us immediately on shipment of tractor as
we will have some other goods which we will want
to set up at the same time.
                     "WESTERN IMPL. & SEED CO.
                          "FLEMING."

Defendant did not ship the tractor, for which ship-
ping directions were given last above set out, nor the
other tractor mentioned in the above letter, the order
for which was given by Mr. Watson.   Before the two
last above letters had been written, and on the

eleventh day of September, 1918, J. D. Hansen, in behalf of Frank Everett & Co., subscribed and sent to defendant at Spokane, Washington, a proposed sales contract identical in terms with that submitted by the Western Implement & Seed Co., except that an order was given therein for 20 tractors at $1,500 each, instead of 10 tractors at $1,385 each, as provided by the proposal made by the partnership. The offer of a contract and order for the purchase of tractors by Frank Everett & Co., above mentioned, was approved by R. S. Townsend, local manager of defendant on September 16, 1918. On the same day Townsend wrote the Western Implement & Seed Co. as follows:

"Not having further heard from you regarding contracts and orders tendered us on August 27th covering tractors and on August 28th covering plows and drills in answer to our letters of September 4th and 11th respectively, we take it for granted that you perhaps will not wish these contracts considered further by us. We are certainly sorry, Mr. Watson, that there has been the apparent mix-up in Chehalis with regard to business at the present time at that point by us.

"Beg to state that we are returning herewith your check #532 made payable to our order for $300.00, which check accompanied tractor contract dated August 27th and are marking the tractor contract void at this time. * *

"We wish to thank you, Mr. Watson, for the consideration which you have shown us and assure you that if suitable arrangements can be made at a future date that we will be glad to make arrangements with you which should be mutually beneficial."

The next day, September 17, 1918, defendant supplemented the above letter to the Western Implement & Seed Co., by a further communication as follows:

"We have yours of the 14th instant and had supposed that you were fully advised regarding the turn that the tractor business had taken at Chehalis as Mr. Hansen of the Frank Everett Company was fully advised and we supposed of course that he would inform you and Mr. Watson. However, our letter of yesterday was fully explanatory along this line so that we are now obliged to return to you your check #3 for $100.00 as shipping deposit money on tractor which you wished shipped yourselves at Satsop, Washington, which of course we will be unable to ship under present circumstances which we regret.

"We are sorry that it was necessary to complete the details of the contract at Chehalis on such short order but we assure you that we acted in a way which seemed best and hope that the matter will be entirely agreeable."

Early in September, 1918, the Moline Plow Co., of Illinois, and the defendant, as its distributing and selling agency, advanced the dealer's price of the tractors and attachments from $1,466 as provided for in the proposed contract with the Western Implement & Seed Co., to $1,581, with a corresponding advance in price to the farmer, making the price to the latter with freight and cartage included, $1,725 instead of $1,600, the price before the advance was made. The price to which the tractors was advanced as aforesaid prevailed until after the expiration date specified in the proposed contract of the parties. The tractors could not be obtained, even at the advanced price, except from the Moline Plow Company of Illinois, or one of its authorized distributors or dealers. Plaintiff in testifying, and his counsel while trying the cause, referred to the advanced price of $1,725 as the market price at the times of delivery specified in the contract, and $1,466, less 20 per cent, as the contract price.

Defendant on September 16, 1918, in its communication to the Western Implement & Seed Co., positively declared that it was unable to, and would not supply any of the tractors covered by the order given on October 27th, and informed the Western Implement & Seed Co., that Frank Everett & Co. was the only concern from which those tractors or any of them could be secured for sale or use in the territory described in the contract mentioned. The Western Implement & Seed Co. was compelled to and did fill the two orders for tractors mentioned in its letter to defendant of September 14, 1918, by purchases thereof from Frank Everett & Co. The Western Implement & Seed Co. sold the two tractors last referred to for $1,600 each. Frank Everett & Co. furnished the tractors mentioned at prices which enabled the Western Implement & Seed Co. to make a profit of $150 on the sale of one of them and $50 upon the sale of the other. Frank Everett & Co., pursuant to instructions from defendant, then advised Western Implement & Seed Co. that it would not furnish any additional tractors for less than $1,725, the price to the farmer, thus closing to the Western Implement & Seed Co. all opportunity to procure the tractors ordered by it and sell them at a profit. Before defendant, as aforesaid, declared that it would furnish no tractors to the Western Implement & Seed Co., the latter in preparing to engage in the business of a dealer in the tractors and implements manufactured by the Moline Plow Co., besides securing a place of business and employing salesmen, expended $25 for stationery, and $75 for exhibiting and demonstrating the tractors.

The price which the users of tractors were required to pay, included a freight charge upon each

tractor of $81, and it cost the dealer $15 to deliver and place a tractor in the hands of the user.   There is no evidence in the record that the Western Implement & Seed Co. secured or could have secured any orders for the sale of tractors, except the two above mentioned, or that it attempted to sell or obtain any orders for the sale of tractors after September 17, 1918.

The Western Implement & Seed Co., did not furnish to defendant any shipping directions for other tractors, which the order specified should be delivered subsequent to September, 1918, and it did not make any demand upon defendants for the shipment of any of those tractors.

At the close of plaintiff's case in chief defendant interposed a motion for a nonsuit, which was denied by the court.   In support of that motion, defendant contended: (1) That the proposal made by the Western Implement & Seed Co., on August 27, 1918, for the purchase of tractors and the exclusive right to sell the same in a specified territory, was never accepted by defendant, and therefore no contract was consummated between defendant and the Western Implement & Seed Co.; (2) That the evidence failed to show any demand on defendant, made prior to the commencement of the action, for the delivery of the tractors in question, excepting two in September, 1918; (3) That the evidence failed to show that plaintiff or the Western Implement & Seed Co. suffered any damages because of the failure of defendant to ship or deliver tractors to the Western Implement & Seed Co.; and (4) That the evidence showed that the contract of defendant with Frank Everett & Co., was signed by J. D. Hansen, a partner in the Western Implement & Seed Co., thus establishing a dissolution

of the partnership firm, and the right of defendant to terminate its contract upon which plaintiff bases his right of action.

1. The trial court correctly decided that the telegram of defendant to the Western Implement & Seed Co., of September 3, 1918, and its letter of the following day, amounted to an acceptance of the offer to which they referred, and created a contract between defendant and the Western Implement & Seed Co: *Shaw Wholesale Co.* v. *Hackbarth,* 102 Or. 80 (198 Pac. 908, 201 Pac. 1066). However, if the telegram and letter mentioned, together with the letter of defendant to the Western Implement & Seed Co., dated September 4, 1918, properly might be considered as a new proposal for a contract, then the new offer embraced in such proposal was accepted and the contract completed by the letter of September 14, 1918, written by the Western Implement & Seed Co. to defendant: 6 R. C. L. 612.

2. The contract in question constituted the basis of the entire business of the Western Implement & Seed Co. One member of the firm could not, without the consent of the others, rescind that contract or bind the firm by an agreement made for the purpose of breaking up the firm or which would work a practical dissolution thereof: 30 Cyc. 491, 495; 20 R. C. L. 884. The contractual obligations of defendant to the copartnership were unaffected by the action of Hansen, one of its members, in respect to the dealer's contract entered into by defendant with Frank-Everett & Co.: 30 Cyc. 661.

3. That the contract in its entirety was repudiated by the defendant at the time the first act of performance upon its part was due is not open to serious question. The evidence clearly indicated that the

Western Implement & Seed Co. was performing the contract on its part at the time the defendant repudiated the contract and refused to perform the same. In those circumstances, the renunciation amounted to breach of the contract, excusing the Western Implement & Seed Co. from further performance or demand for performance, and at once created a right of action in favor of the latter, in the enforcement of which it was entitled at least to nominal damages: *Shaw Wholesale Co.* v. *Hackbarth, supra; Livesley* v. *Strauss,* 104 Or. 356 (206 Pac. 850, 207 Pac. 1095); *Lewis* v. *Craft,* 39 Or. 305, 313 (64 Pac. 809); *Catlin* v. *Jones,* 48 Or. 158 (85 Pac. 515); *Longfellow* v. *Huffman,* 49 Or. 486, 491 (90 Pac. 907); *Catlin* v. *Jones,* 52 Or. 337, 339 (97 Pac. 546); *Krebs Hop Co.* v. *Livesley,* 55 Or. 227, 235 (104 Pac. 3); 5 Page on Contracts, § 2908; Sutherland on Damages (4 ed.), § 10. No error was committed by the court in overruling defendant's motion for a nonsuit.

The trial court instructed the jury as to the measure of damages as follows:

"The standard for computing plaintiff's damages is the difference between the contract price as provided for in the contract for said tractors and the market price of the tractors at the time and place of delivery, but not to exceed the sum asked for in the complaint, less the sum of $50.00 on one tractor, and the sum of $150.00 on a second tractor, in which amounts plaintiff testified he was able to reduce his damage, and the further sum of $81.00 per tractor, which represents the freight which would have to be paid on each tractor had they been shipped.

"In addition to the damage I have just referred to, if you find that the partnership relied upon the execution of the contract set out in the complaint and introduced in evidence, and prepared to demonstrate and sell the tractors in question, and thereby incurred an expense for printing stationery, and incurred ex-

pense for demonstrating the same, * * you may allow the plaintiff such sum or sums reasonably expended in preparing to fulfill the contract in question, but not to exceed the sum of $25.00 for stationery, and $75.00 for expenses for operating and exhibiting tractors.''

Defendant excepted to the giving of each of the foregoing instructions and assigns the same as error. Defendant insists that the rule for estimating damages given in the first above instruction is inapplicable to the facts shown by the evidence in the instant case upon the ground that it authorized the jury to award damages to the plaintiff for lost profits, which did not necessarily result from a breach of the contract and which the evidence did not show with reasonable certainty would have been realized if the contract had been performed by defendant. Defendant objected to the second above instruction for the reason that the contract provided that the defendant should not be liable for any of the expenditures mentioned.

4. Upon the breach of a contract, the injured party is entitled to compensation for gains prevented and losses sustained. Where the contract which is broken provides for the sale of a commodity without more, the value of which commodity is fixed by free trading therein upon an open market, ordinarily the difference between the contract price and the market price thus established is the measure of such compensation, in an action for damages brought by the buyer: *Feeney & Bremer Co.* v. *Stone,* 89 Or. 360, 369, 379, 382 (171 Pac. 569, 174 Pac. 152); *Hockersmith* v. *Hanley,* 29 Or. 27, 36 (44 Pac. 497); *Krebs Hop Co.* v. *Livesley, supra; Russell Miller Milling Co.* v. *Bastasch,* 70 Or. 475, 479 (142 Pac. 355); *Stillwell* v. *Hill,* 87 Or. 112, 122 (169 Pac. 1174).

5. The measure of damages above stated, however, does not apply to a claim of damages by the buyer

for anticipated profits alleged to have been prevented by the breach of the provisions of a contract of sale wherein the seller, who controls the production and sale of the article, grants to the buyer the exclusive right to sell the same for a definite period within a designated district, and agrees upon certain specified conditions to pay the buyer a stipulated commission upon each sale made by him. The measure of damages in such cases is the profits which it is reasonably certain the buyer might have realized if defendant had performed the contract: *Bredemeier* v. *Pacific Supply Co.*, 64 Or. 576, 582 (131 Pac. 312); *Mueller* v. *Bethesda Mineral Spring Co.*, 88 Mich. 390 (50 N. W. 319).

The contract under consideration in the instant case was one in which the sole manufacturer of a line of farm implements clothed a partnership firm with the exclusive right of selling manufactured articles in a specified territory for a given time, and agreed to pay the dealer so appointed a stipulated commission upon each sale made by it as full compensation for the services rendered and the expenditures incurred by it in making sales.

The order for tractors, and the deposit in connection therewith, were incident to the main purposes of the contract and in the nature of an assurance to defendant that the partnership firm would push sales and sell not less than ten tractors within the life of the contract. The penalty for failure of the firm to receive and pay for all of the tractors ordered was the forfeiture of the amount deposited, and its failure to push sales of the tractors in preference to all others operated to deprive it of the compensation stipulated in the contract.

The firm did not desire or intend to use the tractors which it contracted to buy or to keep the same in

112 Or.—28

stock. It was contemplated by the parties that those tractors should be delivered by defendant as sales were made by the firm. The Western Implement & Seed Co., by the terms of the contract, was required to make sales at the prices fixed by defendant and to take from each purchaser an order, containing the price and terms of the sale of the tractor covered thereby and send the same to the defendant with shipping instructions; shipment was to be made in the name of defendant with bill of lading attached to sight draft for the price of the tractor to the party purchasing the same for his own use. The purchaser or the firm was required to pay the draft before defendant would release the tractor or deliver the same. Defendant was entitled to retain all the proceeds of such draft except the stipulated commissions.

The benefit to the Western Implement & Seed Co., contemplated by the parties and which induced the firm to assent to the contract, was the commission or compensation named in the contract, which the firm might earn by making sales of tractors. The contract expressly stipulated that the discounts specified therein included and were in full for all compensation for services and expenses of the dealer, both before and after the sale. The right to payment of the compensation provided by the contract was dependent upon the number of tractors sold and completed deliveries thereof made to purchasers, and also upon sales of tractors being made within the territory and for use therein, and upon the further condition that the firm exerted itself energetically in pushing sales of defendant's tractors in preference to all others.

6. The right of the firm to commissions upon sales depended upon the contingencies above mentioned—

whether the firm paid for and secured delivery of all the tractors to itself or caused them to be delivered upon orders from the purchasers. In the instant case plaintiff seeks to recover lost profits equal to the amount of the commissions he asserts the firm would have earned upon the sale of ten tractors. It is clear from the foregoing examination of the contract that the profits or commissions which plaintiff alleged were prevented did not necessarily result from a breach of the contract. All the authorities agree that a claim for losses of that character is one for special damages. Before such damages can be recovered, the facts constituting the same must be specifically pleaded and proof furnished showing with reasonable certainty that such gains or benefits were prevented by the acts of the defendant. The amount awarded to plaintiff by the verdict of the jury consists in a large part of the commissions mentioned, and this without the production by the plaintiff of any evidence from which the jury might have determined that any such sales except two would have been made by the firm if the contract had not been broken.

7. In the absence of proof from which the jury might have determined with reasonable certainty that sales would have been made and commissions earned under the terms of the contract, plaintiff was not entitled to recover for the loss of such commissions: *Feeney & Bremmer Co.* v. *Stone, supra; McGinnis* v. *Studebaker,* 75 Or. 519, 523 (146 Pac. 825, 147 Pac. 525, Ann Cas. 1917B, 1190, L. R. A. 1916B, 868, and note); *Bredemeier* v. *Pacific Supply Co.,* 64 Or. 576 (131 Pac. 312); *Blagen* v. *Thompson,* 23 Or. 239 (31 Pac. 647, 18 L. R. A. 315); *Hoskins* v. *Scott,* 52 Or. 271 (96 Pac. 1112).

The proof required to establish loss of anticipated profits for breach of a contract like that involved

in the instant case is pointed out in the following decisions: *Bredemeier v. Pacific Supply Co., supra; Meglemry v. Gebhardt Chili Powder Co.*, 187 Ill. App. 14; *Oberfelder v. J. A. Mattingly Co.* (Ky.), 120 S. W. 352; *Randall v. Peerless Motor Car Co.*, 212 Mass. 352 (99 N. E. 221); *Mueller v. Bethesda Mineral Spring Co.*, 88 Mich. 390 (50 N. W. 319); *Hitchcock v. Supreme Tent K. M.*, 100 Mich 40 (58 N. W. 640, 43 Am. St. Rep. 423); *Wakeman v. Wheeler & W. Mfg. Co.*, 101 N. Y. 205 (4 N. E. 264, 54 Am. Rep. 676); *Pittsburg Gauge Co. v. Ashton Valve Co.*, 184 Pa. 36 (39 Atl. 223); *Eastern Motor Sales Corp. v. Apperson-Lee Motor Co.*, 117 Va. 495 (85 S. E. 479); *Emerson v. Pacific Coast etc. Co.*, 96 Minn. 1 (104 N. W. 573, 113 Am. St. Rep. 603, 6 Ann. Cas. 973, 1 L. R. A. (N. S.) 445); *Winston Cigarette Machine Co. v. Wells-Whitehead Tobacco Co.*, 141 N. C. 284 (53 S. E. 885, 8 L. R. A. (N. S.) 255); *Guetzkow Bros. Co. v. Andrews & Co.*, 92 Wis. 214 (66 N. W. 119, 53 Am. St. Rep. 909, 52 L. R. A. 209, and note).

The evidence produced by plaintiff in support of his claims for damages showed sales of two tractors and the expenditure of $100 in preparing to act as a dealer under the contract. Aside from the contract and the evidence above mentioned there was nothing before the jury upon which to estimate or base damages. For two sales, no more having been made and no evidence having been offered that such additional sales probably might have been made, the contract provided a commission of $219.90 upon each tractor of $439.80 upon the two sales. Plaintiff admitted that the firm actually obtained a profit of $200 upon those sales. The amount of the verdict was $3,612. In view of the nature of the contract and the rules enunciated by the cases above cited, it is clear that

the rule for the measure of damages adopted by the trial court was inapplicable to the facts shown by the evidence in the instant case. This conclusion is strengthened by the verdict which is out of all proportion to the amount of damages shown by the evidence.

In support of the judgment plaintiff contends, contrary to the averments and prayer of his complaint, that this is not an action to recover profits, but is the ordinary action of the buyer against the seller who has repudiated the contract to recover general damages represented by the difference between the contract price and the market price. Assuming that the copartnership would have received and paid for the tractors, regardless of whether it was able to secure orders for the sale of the same, and that without making any sales it would have been entitled to commissions thereon, the plaintiff argues that the contract price of each tractor was $1,466. less 20 per cent of $1,162.80, and that the market price of each tractor was $1,725, the retail price fixed by defendant, less $81, the freight charge from Moline, Illinois, to Chehalis, Washington.

Under the theory advanced by plaintiff, proof of ability upon the part of the copartnership to pay for and receive the tractors was essential in order to establish that damage resulted from the breach of the contract: *Longfellow* v. *Hoffman, supra; Catlin* v. *Jones, supra.* Proof of such ability was entirely lacking. Moreover, the contract price was $1,466 for each tractor and not $1,162.80 as claimed by plaintiff. By accepting the latter sum as the contract price as claimed by plaintiff, the court and jury in effect allowed commissions without any proof that sales would have been made if the contract had not been broken

by defendant. As above pointed out that was inadmissible under any theory.

The contention of plaintiff is unsound in respects other than those above mentioned, but the foregoing observations indicate that it is based on legal principles which are inapplicable to the instant case.

8. A party injured by the stoppage of a contract is entitled to recover the amount which he has been induced to expend on the faith of the contract: *United States* v. *Behan,* 110 U. S. 338 (28 L. Ed. 168, 4 Sup. Ct. Rep. 81, see, also, Rose's U. S. Notes). But where lost profits and expenditures so made are both sought, the recovery must be confined to the latter claim unless probable profits in excess of that amount are shown: *Wells* v. *National Life Assn.,* 99 Fed. 222 (39 C. C. A. 476, 53 L. R. A. 33, and note); 8 R. C. L. 496.

In its direction to the jury concerning expenditures upon the faith of the contract, the trial court omitted the above-stated qualification upon the right to recover such expenditures, and in that respect the instruction was inaccurate.

It follows from the foregoing discussion that the judgment of the trial court must be reversed. We deem it unnecessary to examine other questions raised by the defendant.

The judgment of the Circuit Court is reversed and the cause remanded for a new trial and for such other and further proceedings therein not inconsistent with this opinion as may be deemed appropriate.

REVERSED AND REMANDED. REHEARING DENIED.
MOTION TO ARGUE PETITION FOR REHEARING
DENIED.

McBRIDE, C. J., and BEAN and BROWN, JJ., concur.