[No. 33898. Department Two. July 11, 1957.]

FRANK HERR *et al., Appellants*, v. CHESTER J. BRAKEFIELD *et al., Respondents.*[1]

*Philip W. Richardson* and *Smith Troy*, for appellants.

ROSELLINI, J.—This is a conversion action, brought against the partnership of Brakefield and Stidham for wrongfully reselling certain beef cattle which the plaintiffs alleged they had purchased from the partnership. Service was obtained upon the defendant Stidham only. The cause was tried to the court, which concluded that Brakefield, who had made the sale to the plaintiffs, had no apparent authority to do so. It was conceded that he had no actual authority.

The evidence disclosed that the defendants were partners in a farming operation in Pierce county—the raising of beef cattle and hay being the chief operations. It appears that Brakefield took the major responsibility for the management and operation of the farm, and all of the plaintiffs' dealings had been with him. On June 6, 1954, the plaintiffs went to the Brakefield and Stidham farm to look at a sick bull. Neither of the defendants lived on the farm, but both were present on that day. However, the plaintiffs did not talk to Mrs. Stidham, who was directing the removal

[1]Reported in 314 P. (2d) 397.

of shrubbery and was standing some distance from the barnyard where they were conferring with Brakefield. Brakefield offered to sell them the herd of cattle, consisting of forty-three head, and a price was agreed upon. He also agreed to allow the cattle to remain in the pasture for ninety days.

The plaintiffs gave their checks for their respective portions of the purchase price to Brakefield and were given a bill of sale. The checks were drawn in favor of the partnership. Brakefield endorsed the checks and kept the proceeds. A few days later, the plaintiffs removed seven head of the cattle. Between the date of the purchase and June 23, 1954, they stopped by on several occasions to look at the herd. On June 23, it was missing, and they discovered that Mrs. Stidham had sold the remaining animals for slaughter. They had not seen her or spoken to her since the purchase was made, although Herr had made some attempt to find her.

Before this action was commenced, Brakefield disappeared. Mrs. Stidham defended on the ground that Brakefield had no actual authority to sell the cattle, and that the fact that they were sold at a price far below the prevailing market price was sufficient to place the plaintiffs on notice that he lacked such authority.

The court found that the price was reasonable, and that the plaintiffs were bona fide purchasers for value without any actual knowledge of Brakefield's lack of authority. It further found that in the beef-raising business, the sale of an entire herd of cattle is an occasional practice but not the usual method of transacting such business. It was upon this latter finding that the court based its conclusion that Brakefield lacked apparent authority to make the sale and entered judgment for the defendant Stidham. The plaintiffs contend that there is no substantial evidence to support this finding.

The only witness who testified on this matter was the plaintiff Lowell. He stated that not infrequently beef cattle raisers will sell their entire herds and then restock their farms when prices are favorable, that they are influ-

enced in these decisions by the condition of the market, and that they do not necessarily go out of business as a result of such sales. He named several cattle raisers, including partnerships, who had followed this practice on occasion, and stated that it was not unusual, although "not everybody operates that way."

RCW 25.04.090 (1) provides:

"Every partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership, unless the partner so acting has in fact no authority to act for the partnership in the particular matter, and the person with whom he is dealing has knowledge of the fact that he has no such authority."

There is no question but that the defendants were in the business of raising and selling beef cattle, and the only question is whether the disposition of an entire herd in a single sale was so unusual as to put the purchaser on notice that the partner with whom he was dealing might be acting beyond his authority. That the plaintiffs in this case were not put on notice, is inherent in the finding that they acted in good faith.

The trial court apparently based its decision upon those cases which have held that, without the express consent of his partners, a partner may not sell capital assets and may not sell the entire stock of property held for sale if this involves the breaking up of the business. See Crane on Partnership (2d ed.) 253-54; *Hunter v. Waynick,* 67 Iowa 555, 25 N. W. 776; *Bender v. Hemstreet,* 12 Misc. 620, 34 N. Y. S. 423; *Watson v. Oregon Moline Plow Co.,* 112 Ore. 414, 227 Pac. 278. There was no finding that the sale of the herd effected a dissolution of the partnership or a breaking up of its farming operation, and there was no evidence to this effect. The evidence was, on the other hand, that dispositions such as this one are sometimes advantageous to the business.

In *Merrill v. O'Bryan*, 48 Wash. 415, 93 Pac. 917, in discussing the power of a partner to bind his firm, we said:

"So far as third persons who deal with a partner without notice are concerned, the copartners are bound if the transaction be such as the public may reasonably conclude is directly and necessarily embraced within the partnership business as being incident or appropriate to such business according to the course and usage of conducting it."

In *Swanson v. Webb Tractor & Equipment Co.*, 24 Wn. (2d) 631, 167 P. (2d) 146, we stated the rule as follows:

"So far as third persons are concerned, the authority of a partner, whether he be a member of a general partnership or of a special partnership, must be found in the actual agreement of the partners, or through implication arising from the nature of the business or the actual or usual manner in which it is conducted by the particular partnership or by similar partnerships in the same locality, or else from a reasonable inference of its necessity or fitness for the successful operation of the particular partnership business."

And in *Melosevich v. Cichy*, 30 Wn. (2d) 702, 193 P. (2d) 342, we quoted with approval the following statement from 20 R. C. L. 882, § 94:

"Every partner in a commercial partnership, apart from any special powers conferred on him by the articles of copartnership, is not only a principal but also a general and authorized agent of the firm, and the agent of all the partners for all purposes within the scope and objects of the partnership. Thus it is that a partner embraces the character both of principal and agent. With respect to the concerns of the partnership, he virtually acts as principal for himself and as agent for his partners. During the existence of a partnership therefore each member is deemed to be authorized to transact the whole business for the firm, his acts being treated as the acts of all, and binding on them just as if they were present and sanctioning that which is done, whether it is done in the firm name or in the name of a partner."

While the evidence regarding the practice of selling entire herds of cattle would not lead to the inference that such a sale was *necessary* to the successful conduct of the cattle business and the farming operation, the showing

was that such sales were not unusual and were appropriate and not ordinarily detrimental to enterprises of this kind. Especially in view of the fact that the sale of this herd did not destroy the farming operation and the further fact that Brakefield had, in all of the plaintiffs' dealings with him, acted as the managing partner with the tacit consent of Mrs. Stidham, we believe that the court was unjustified in concluding that he had no apparent authority to make the sale in question.

If Mrs. Stidham has been deceived by her partner, she has her remedy against him.

The judgment is reversed, and the cause remanded with directions to determine the amount of damages and enter judgment accordingly.

HILL, C. J., SCHWELLENBACH, DONWORTH, and FOSTER, JJ., concur.